### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

RICHARD BAATZ et al.,

      Plaintiffs,

v.

COLUMBIA GAS TRANSMISSION, LLC,

      Defendant.

Civil Action No. 1:14-cv-505

Judge Gwin

### MEMORANDUM IN SUPPORT OF DEFENDANT'S
### MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Paul K. Stockman
Branden P. Moore
MCGUIREWOODS LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 667-6000
Telecopier: (412) 667-6050
pstockman@mcguirewoods.com
bpmoore@mcguirewoods.com

Jodie N. Herrmann (admitted *pro hac vice*)
MCGUIREWOODS LLP
201 North Tryon Street, Suite 3000
Charlotte, North Carolina 28202
jherrmann@mcguirewoods.com

*Counsel for Columbia Gas Transmission, LLC*

Dated:  May 27, 2016

# TABLE OF CONTENTS

**Page**

Table of Contents ......................................................................................................... i

Table of Authorities ...................................................................................................... ii

I.      Introduction and Summary of Argument ...................................................... 1

II.     Statement of Issues ...................................................................................... 2

III.    Factual Background ..................................................................................... 2

        A.      Columbia's Federally-Regulated Natural Gas Storage Activities ......................... 2

        B.      Plaintiffs' Property ........................................................................... 4

        C.      This Lawsuit and Columbia's Condemnation Claim in *Wilson* ............................. 5

IV.     Argument:  Plaintiffs' Amended Complaint Should Be Dismissed. ................................. 6

        A.      Plaintiffs' Common Law Claims and Request for Injunctive Relief Are
                Preempted by the NGA. ..................................................................... 6

                1.      By Enacting the NGA, Congress Occupied the Field of Matters
                        Relating to the Operation of Interstate Gas Storage Fields ...................... 7

                2.      Allowing Common Law Tort Remedies or Granting Plaintiffs'
                        Request for Injunctive Relief Would Place This Court in Conflict
                        with FERC's Authority under the NGA. ..................................... 11

                3.      Plaintiffs Can Obtain a Full and Fair Remedy under the NGA,
                        Without the Need for Common Law Tort Remedies. ............................. 12

        B.      Plaintiffs Improperly Attempt to Mount a Collateral Attack on a FERC
                Certificate Governing the Medina Storage Field. ................................ 13

        C.      Plaintiffs May Not Pursue Common Law Claims Where a Statutory
                Remedy Already Protects Their Interests. ........................................ 14

        D.      The Court Should Strike Plaintiffs' Claim for Punitive Damages ...................... 15

        E.      Plaintiffs' Mandamus and Declaratory Judgment Claims,
                To the Extent They Seek Cognizable Forms of Relief, Are Moot. ..................16

V.      Oral Argument May Assist The Court In Resolving These Questions ........................... 17

VI.     Conclusion ................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

CASES:

*American Energy Corp. v. Rockies Express Pipeline LLC*,
    622 F.3d 602 (6th Cir. 2010) ............................................................. 8, 9, 12, 13, 14

*Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785 (6th Cir. 2016)....................................6

*Barker v. Netcare Corp.*, 768 N.E.2d 698 (Ohio Ct. App. 2001) ..................................16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................16

*Caplinger v. Uranium Disposition Servs.*,
    No. 2:08-cv-548, 2009 WL 367407 (S.D. Ohio Feb. 11, 2009) .............................14

*Cataldo v. U.S. Steel Corp.*, 676 F.3d 542 (6th Cir. 2012)............................................6

*Columbia Gas Transmission Corp. v. An Exclusive Gas Storage Easement*,
    578 F. Supp. 930 (N.D. Ohio 1983), *aff'd*, 776 F.2d 125 (6th Cir. 1985) ............................2, 3

*Columbia Gas Transmission Corp. v. An Exclusive Natural Gas Storage
    Easement*, 620 N.E.2d 48 (Ohio 1993) ..................................12

*Columbia Gas Transmission Corp. v. An Exclusive Natural Gas Storage
    Easement*, 688 F. Supp. 1245 (N.D. Ohio 1988) ..................................1

*Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage
    Easement*, 962 F.2d 1192 (6th Cir. 1992) ..................................9, 12

*Columbia Gas Transmission v. Exclusive Natural Gas Storage Easement*,
    747 F. Supp. 401 (N.D. Ohio 1990)..................................... 7, 8, 9, 10, 15

*Columbia Gas Transmission, LLC v. Crawford*,
    267 F.R.D. 227 (N.D. Ohio 2010) ..................................1, 9, 10

*Compton v. Swan Super Cleaners, Inc.*,
    No. 08-CV-002, 2008 WL 1924251 (S.D. Ohio Apr. 29, 2008) .............................15

*Darby v. A-Best Prods. Co.*, 811 N.E.2d 1117 (Ohio 2004)....................................11

*English v. Gen. Elec. Co.*, 496 U.S. 72 (1990) .....................................7

*Fay v. Dominion Transmission, Inc.*,
    No. 3:10cv1384, 2011 WL 2632910 (M.D. Pa. July 5, 2011)...............................15

*Gray v. Kroger Corp.*, 804 F. Supp. 2d 623 (S.D. Ohio 2011).....................................14

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009) ......................................................16

*Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707 (1985)..................................6, 7

*OneOk, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) ..................................................................10

*Pankey v. Webster*, 816 F. Supp. 553 (W.D. Mo. 1993) ............................................................16

*Pub. Serv. Comm'n v. FERC*, 610 F.2d 439 (6th Cir. 1979) .........................................................3

*Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293 (1988) .................................................3, 7, 12

*Wiles v. Medina Auto Parts*, 773 N.E.2d 526 (Ohio 2002) ..........................................................14

## ADMINISTRATIVE DECISIONS:

*Columbia Gas Transmission Corp.*, 35 F.E.R.C. ¶ 61,345 (June 17, 1986)..................................13

*Columbia Gas Transmission Corp.*, 41 F.E.R.C. ¶ 62,118 (Nov. 2, 1987) ..............................4, 13

*Mobil Exploration & Producing N. Am., Inc.*, 39 F.E.R.C. ¶ 63,033 (May 26, 1987)...................4

*The Ohio Fuel Gas Co.*, 20 F.P.C. 63 (July 21, 1958) ..................................................................4

## STATUTES AND COURT RULES:

15 U.S.C. § 717 *et seq.*..................................................................................................................1

15 U.S.C. § 717(a) ..........................................................................................................................4

15 U.S.C. § 717f(b).................................................................................................................4, 8, 11

15 U.S.C. § 717f(c)(1)(A)............................................................................................................3, 4

15 U.S.C. § 717f(e) ..........................................................................................................................4

15 U.S.C. § 717f(h).......................................................................................................................6, 7

28 U.S.C. § 1361 ............................................................................................................................16

28 U.S.C. § 2201 ............................................................................................................................17

FED. R. CIV. P. 71.1 ..........................................................................................................................6

OHIO REV. CODE § 2315.21 ...........................................................................................................16

OHIO REV. CODE § 2315.21(A)(1) .........................................................................................15

OHIO REV. CODE § 2315.21(C)(1)–(2)...................................................................................15


**ADMINISTRATIVE REGULATIONS:**

18 C.F.R. § 157.6(d) ..................................................................................................4, 13

18 C.F.R. § 157.11 .....................................................................................................4, 13


**OTHER AUTHORITIES:**

NOBLE, *Ten Years of Federal Underground Gas Storage Condemnations*, E. MIN. L.
FOUND.: PROC. OF THE 14TH ANN. INST., §§ 26:02–03 (1993), *available at* http://www.
emlf.org/clientuploads/directory/whitepaper/Noble_93.pdf .....................................................3

I.       **Introduction and Summary of Argument**

In this action, Plaintiffs claim that Defendant Columbia Gas Transmission, LLC ("Columbia") is using their subsurface property to store natural gas without the legal right to do so.  As Plaintiffs admit in their Amended Complaint, Columbia's gas storage activities are within the regulatory jurisdiction of the Federal Energy Regulatory Commission ("FERC") under the Natural Gas Act ("NGA"), 15 U.S.C. § 717 *et seq.  See* Am. Compl. (ECF No. 11) ¶ 30. Plaintiffs also admit that the NGA provides them with a remedy, entitling them to just compensation if Columbia were found to have appropriated their property.  *Id.* ¶ 34.  Despite this full and fair remedy arising under federal law, Plaintiffs are fruitlessly pursuing duplicative remedies under Ohio common law, seeking compensatory and punitive damages for alleged trespass and restitution for Columbia's purported unjust enrichment.  Plaintiffs also demand injunctive relief that is not only inconsistent with their other requests, but which also is contrary to both Columbia's FERC mandate and public policy, in that it seeks the effective closure of the entire Medina Storage Field.

Even if Plaintiffs' allegations were true, their common law and injunctive relief claims fail as a matter of law because they are preempted by the NGA, as this Court implicitly recognized in *Columbia Gas Transmission, LLC v. Crawford*, 267 F.R.D. 227 (N.D. Ohio 2010). The NGA's comprehensive regulatory scheme involves a matter of "peculiarly vital public interest," *Columbia Gas Transmission Corp. v. An Exclusive Natural Gas Storage Easement*, 688 F. Supp. 1245, 1251 (N.D. Ohio 1988) (Dowd, J.) [hereinafter "*Arnholt*"], that conflicts with and therefore preempts Plaintiffs' state law claims.  Nor can Plaintiffs allege common law claims when an adequate statutory remedy already exists – here, the remedy provided by the NGA. Finally, Plaintiffs' mandamus claim fails because this Court lacks jurisdiction to issue a writ of mandamus against a private defendant.  In any event, Plaintiffs' mandamus and declaratory judgment claims are moot  and therefore fail to state claims for relief because Columbia has

commenced condemnation proceedings against Plaintiffs and thereby admitted that they are entitled to just compensation—the very relief Plaintiffs purport to seek through these claims.

## II.    Statement of Issues

1.    Are Plaintiffs' common-law claims and claims for injunctive relief preempted by the NGA?

2.    Are Plaintiffs' common-law claims and claims for injunctive relief an impermissible collateral attack on a FERC certificate of public convenience and necessity?

3.    Are Plaintiffs' common-law claims and claims for injunctive relief precluded because there already is a fully-adequate statutory remedy that would provide them the relief they seek?

4.    Are Plaintiffs' claims for punitive damages insufficient as a matter of law?

5.    Can this Court issue a writ of mandamus against Columbia, a private defendant?

6.    Are Plaintiffs' mandamus and declaratory judgment claims effectively moot, given that Columbia has already commenced condemnation proceedings against Plaintiffs?

## III.   Factual Background

### A.    Columbia's Federally-Regulated Natural Gas Storage Activities

Columbia operates and maintains an extensive interstate natural gas transportation and storage system. *See* Am. Compl. (ECF No. 11) ¶¶ 26–27; *Columbia Gas Transmission Corp. v. An Exclusive Gas Storage Easement*, 578 F. Supp. 930, 932 (N.D. Ohio 1983) (Dowd, J.) [hereinafter *Parrott*], *aff'd*, 776 F.2d 125 (6th Cir. 1985).  As part of these activities, Columbia operates one of North America's largest underground natural gas storage systems (37 storage fields in four states with nearly 600 billion cubic feet in total capacity), which includes the storage field at issue in this case, the Medina Storage Field.  Am. Compl. (ECF No. 11) ¶ 27.

Like Columbia's other natural gas storage fields, the Medina Storage Field is a naturally occurring geologic formation located approximately one half-mile beneath the earth's surface.  This formation, which serves as an underground storage reservoir, is comprised of porous and permeable rock formations.  *Id.* at ¶ 28.  Columbia stores its customers' gas by injecting it into the pore spaces in these formations during the summer months when demand is low.  *Id.* at ¶ 29. Columbia then returns the natural gas to its customers during the winter, so its customers can sell the gas to consumers when it is needed to heat homes and supply power to businesses.  *Parrott*, 578 F. Supp. at 932.[1]  As courts have observed, these storage fields are an "integral part" of Columbia's operations, and Columbia "could not produce adequate supplies of natural gas for its wholesale customers and through them to the gas consuming public without the use of underground storage facilities."  *Parrott*, 578 F. Supp. at 932.[2]

Columbia's operation of an interstate natural gas transmission and storage system brings it within the scope of the NGA, which provides a "comprehensive scheme of federal regulation of all wholesales of natural gas in interstate commerce," *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300 (1988) (citation omitted), "to assure an adequate, reliable and reasonably-priced supply of natural gas for the entire nation," *Pub. Serv. Comm'n v. FERC*, 610 F.2d 439, 442 (6th Cir. 1979).  *See also* Am. Compl. (ECF No. 11) ¶¶ 26, 30.

Pursuant to the NGA, Columbia applied to FERC to obtain a certificate of public convenience and necessity to acquire, construct and operate the Medina Storage Field in interstate commerce.  15 U.S.C. § 717f(c)(1)(A); Am. Compl. (ECF No. 11) ¶ 31.  To obtain the certificate, Columbia was required to provide written notice to all persons who own property

---

[1] *See also* NOBLE, *Ten Years of Federal Underground Gas Storage Condemnations*, E. MIN. L. FOUND.: PROC. OF THE 14TH ANN. INST., §§ 26:02–03 (1993), *available at* http://www. emlf.org/clientuploads/directory/whitepaper/Noble_93.pdf.

[2] Indeed, Columbia's storage system has been critical in ensuring reliable gas supply.  For example, "[i]n 1991, a pipeline problem in the southwest curtailed deliveries to Columbia's system during a period of particularly cold weather, which meant that 85% of the gas deliveries had to be drawn from storage.  As a result of storage, almost no one knew there was a problem. Without storage, there would have been a disaster."  NOBLE, *supra*, at § 26:05 n.3.

beneath the proposed storage field or its protective buffer.  18 C.F.R. § 157.6(d); Am. Compl. (ECF No. 11) ¶ 31.  FERC also required public hearings on Columbia's application, giving affected property owners the opportunity to be heard prior to FERC's decision.  18 C.F.R. §157.11; Am. Compl. (ECF No. 11) ¶ 31.  In accordance with these procedures, the Federal Power Commission and then FERC granted a certificate of public convenience and necessity for the Medina Storage Field, which has been exclusively owned and operated by Columbia or its predecessors in interest since 1959.  *See, e.g.*, *The Ohio Fuel Gas Co.*, 20 F.P.C. 63 (July 21, 1958); *Columbia Gas Transmission Corp.*, 41 F.E.R.C. ¶ 62,118 (Nov. 2, 1987); Am. Compl. (ECF No. 11) ¶ 33.

Once FERC granted the certificate of public convenience and necessity, Columbia became obligated to operate and maintain the Medina Storage Field in compliance with the certificate's terms and conditions and FERC regulations.  15 U.S.C. §§ 717(a), 717f(c)(1)(A), 717f(e).  Columbia may not "abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission."  15 U.S.C. § 717f(b).  "This provision creates a continuing regulatory obligation, irrespective of private contractual arrangements, not to abandon any certificated obligations before obtaining authorization from the Commission to do so."  *Mobil Exploration & Producing N. Am., Inc.*, 39 F.E.R.C. ¶ 63,033, at 65,198 (May 26, 1987) (emphasis and citations omitted).

Plaintiffs' claims arise against this regulatory backdrop – a set of background facts and legal principles admitted in the Amended Complaint.

### B.    Plaintiffs' Property

Plaintiffs state that they own land in Medina County, and specifically admit that their land lies within the boundaries of the Medina Storage Field.  Am. Compl. (ECF No. 11) ¶¶ 2–20, 41.  Plaintiffs further allege that Columbia has stored natural gas under their property without reaching a prior agreement with them or completing a condemnation proceeding

pursuant to the NGA, *id.* at ¶¶ 40, 42–43, although they admit that Columbia has attempted to reach an agreement with them, *id.* at ¶ 43.  Plaintiffs allege that, as a result, Columbia has wrongfully stored gas beneath their property, thereby causing injury.  *Id.* at ¶¶ 46, 50.

      **C.**     **This Lawsuit and Columbia's Condemnation Claim in *Wilson***

      Plaintiffs initiated this action on March 5, 2014 by filing the Complaint (ECF No. 1), which Columbia moved to dismiss (ECF No. 10).  On May 12, 2014, without responding to Columbia's Motion to Dismiss, Plaintiffs filed the Amended Complaint, adding additional plaintiffs without making substantive changes to their claims.  In the Amended Complaint, Plaintiffs allege claims for common law trespass (Count I) and unjust enrichment (Count II), seeking compensatory and punitive damages, and also bring a claim for "Mandamus - Inverse Condemnation" (Count III).  Plaintiffs also demand a declaratory judgment as to the parties' respective rights and obligations under the NGA (Count IV) and a permanent injunction prohibiting Columbia from using their property to store natural gas (Count V).  On May 21, 2014, Columbia moved to dismiss the Amended Complaint on the grounds that Count I and II fail to state cognizable claims for relief because they are preempted by the NGA and Count V is inconsistent with Plaintiffs' remaining claims and would bring about a result that would violate FERC's mandate and would also be detrimental to the public interest.  Columbia also moved for dismissal on the ground that this action should be dismissed in light of *Wilson v. Columbia Gas Transmission LLC*, No. 2:12-cv-01203-JLG-TPK ("*Wilson*"), a first-filed case pending in the Southern District of Ohio which involves identical facts and claims.

      On March 5, 2015, Judge Wells granted Columbia's motion to dismiss, holding that the "close similarities" between this case and *Wilson* "counsel toward dismissal of the present action in favor of the first-filed *Wilson* lawsuit."  Memorandum of Opinion and Order Granting the Defendant's Motion to Dismiss (ECF No. 18), at 6.  Judge Wells noted that "Columbia seeks dismissal of this case on a number of grounds, but the Court need only address one of them" and therefore declined to address whether the NGA preempts Plaintiffs' common

- 5 -

law claims.  On appeal, the Sixth Circuit agreed with Judge Wells that "the first-to-file rule does apply to this case," *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 787 (6th Cir. 2016), but held that dismissal was not warranted.  The Sixth Circuit, like Judge Wells, did not address Columbia's argument that the NGA preempts Plaintiffs' common law claims and therefore Columbia files this renewed motion to dismiss.

As this Court is aware, Columbia filed a condemnation counterclaim against certain landowners, including these Plaintiffs, in *Wilson*.  *See* Second Amended Counterclaim, *Wilson* (ECF No. 288).  Through the counterclaim, Columbia, pursuant to its power of eminent domain as authorized by Section 7h of the Natural Gas Act, 15 U.S.C. § 717f(h) and Federal Rule of Civil Procedure 71.1, seeks to take certain interests in these landowners' properties, gain immediate entry and possession of the properties, and determine the amount of just compensation and damages to be paid to the landowners.  Thus, Columbia, in bringing a condemnation claim against Plaintiffs, is providing them with precisely the relief they appear to be seeking through Count IV of the Complaint, which appears to be a request that the Court issue a writ of mandamus compelling Columbia to commence condemnation proceedings against Plaintiffs.  On May 26, 2016, Plaintiffs and Columbia filed a joint motion in *Wilson* seeking to have Columbia's condemnation action against these Plaintiffs severed from *Wilson* and transferred to the Northern District of Ohio.  *See* Joint Motion to Sever and Transfer, *Wilson* (ECF No. 789).

## IV.    Argument:  Plaintiffs' Amended Complaint Should Be Dismissed.

### A.    Plaintiffs' Common Law Claims and Request for Injunctive Relief Are Preempted by the NGA.

Dismissal of state court claims is appropriate where they are preempted by federal law.  *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 557 (6th Cir. 2012) (affirming dismissal of state law claims preempted by ERISA).  Congress has the power to preempt state laws that interfere with, conflict with, or are contrary to federal law.  *See, e.g.*, *Hillsborough Cnty. v.*

- 6 -

*Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985).  The preemption analysis is familiar.
**First,** "state law is pre-empted where it regulates conduct in a field that Congress intended the
Federal Government to occupy exclusively."  *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990).
A court may infer this intent "where the pervasiveness of the federal regulation precludes
supplementation by the States, where the federal interest in the field is sufficiently dominant, or
where the object sought to be obtained by the federal law and the character of obligations
imposed by it reveal the same purpose."  *Schneidewind*, 485 U.S. at 300 (citation omitted).
**Second,** "even where Congress has not entirely displaced state regulation in a particular field,"
state law is preempted "when it actually conflicts with federal law.  Such a conflict will be found
when it is impossible to comply with both state and federal law, or where the state law stands as
an obstacle to the accomplishment of the full purposes and objectives of Congress."  *Id.* (citation
omitted).  Here, both types of preemption, "field preemption" and "conflict preemption," bar
Plaintiffs' common law claims.

### 1.    By Enacting the NGA, Congress Occupied the Field of Matters Relating to the Operation of Interstate Gas Storage Fields.

As noted above, "the NGA long has been recognized as a comprehensive scheme
of federal regulation" that "confers upon FERC ***exclusive*** jurisdiction over the transportation and
sale of natural gas in interstate commerce for resale," including "authority over the . . . facilities
of natural gas companies used in this transportation and sale."  *Id.* at 300–01 (emphasis added)
(citation omitted).  The issues presented here fall squarely within the scope of the NGA's
preemptive reach.  After all, when Congress allowed the holders of certificates of public
convenience and necessity to obtain property by exercising eminent domain, it conclusively
defined the rights and remedies of certificate holders and landowners alike, and definitively
spoke to the manner in which landowners are to be compensated for the use of their properties in
connection with the interstate transmission of natural gas.  *See* 15 U.S.C. § 717f(h).

The clearest statement of this principle is the *Arnholt* decision, a case that is
essentially identical to the present lawsuit.  *Columbia Gas Transmission v. Exclusive Natural*

*Gas Storage Easement*, 747 F. Supp. 401 (N.D. Ohio 1990) (Dowd, J.).  In that case, as here, after Columbia attempted to condemn a tract in Richland County, the landowner filed a trespass counterclaim, seeking compensatory and punitive damages.  *Arnholt*, 747 F. Supp. at 402.  The court entered summary judgment dismissing the trespass counterclaim and associated demand for punitive damages, holding that they were preempted by the NGA, pursuant to which the landowner was limited to a claim for inverse condemnation.  *Id.* at 406.

The court started its analysis with 15 U.S.C. § 717f(b), conferring exclusive federal authority over "the transportation of natural gas in interstate commerce," viewing it as "pivotal in the analysis."  747 F. Supp. at 403–04.  The court further observed that the "Supreme Court has protected" this "federal jurisdiction" from "direct and indirect state regulation."  *Id.* at 404.  Accordingly, the court held that "the landowner's remedies with respect to a taking of his property by the United States Government or by a private corporation authorized to exercise the power of eminent domain are controlled and limited by federal substantive law."  *Id.* Conversely, the court concluded that "the State of Ohio has no power to regulate, directly or indirectly, a natural gas storage field certificated by [FERC]."  *Id.*  Thus, the landowner's state common law tort claims were insufficient as a matter of law.  *Id.*[3]

The Sixth Circuit recently confirmed that the court in *Arnholt* reached the correct result.  In *American Energy Corp. v. Rockies Express Pipeline LLC*, 622 F.3d 602 (6th Cir. 2010) [hereinafter *Rockies Express*], a pipeline company obtained a FERC certificate for the construction of a natural gas transmission line and initiated condemnation proceedings against

---

[3] Plaintiffs may point to the *Wilson* court's denial of a similar motion to dismiss, but the court's ruling there is distinguishable, based on distinctions between the allegations in each case. The complaint in *Wilson* expressly alleged that "plaintiffs are unable to ascertain without discovery whether their properties are within the boundaries of Columbia's certificated storage fields."  Given that uncertainty, the court could not rule, on the face of the Amended Complaint, that Columbia's FERC certificate preempted Plaintiffs' common law claims, although the court (citing *Arnholt*) accepted conceptually that common-law claims would be preempted on a proper evidentiary showing.  *See* Opinion and Order, *Wilson* (ECF No. 256), at 3–4.  By contrast, Plaintiffs here have specifically alleged that their property is within the Medina Storage Field. *See* Am. Compl. (ECF No. 11) ¶ 41.

the coal company landowners, seeking a pipeline easement.  622 F.3d at 603.  In response, the coal companies filed a competing lawsuit in Ohio state court seeking not only declaratory and injunctive relief, but also damages for the alleged conversion of their coal resources.  *Id.* at 604. After the case was removed to federal court, the trial court dismissed the case, and the Court of Appeals affirmed.  *Id.* at 603–04.  After "mak[ing] short work" of the plaintiffs' claims for declaratory and injunctive relief, the Court turned to the common law conversion claim, affirming its dismissal on the ground that the coal companies could obtain full relief through the condemnation action:

> That the coal companies place a "conversion" label on their claim for money damages does not change matters.  What is it about a "conversion" claim that lies outside the scope of a condemnation action?  If the condemnation action will compensate for "any injury" to the residue, taking into account "every element" of the question of value, it may entertain the damages theory presented.

*Id.* at 605–06, 607 (citations omitted).[4]

The same logic applies here: if Plaintiffs' allegations have merit, then they have a complete remedy under the NGA, which they will necessarily receive in connection with Columbia's pending condemnation claims.  Here, as in *Rockies Express*, no reason exists for the state common law to step in and confer duplicative or conflicting remedies.  This Court should accordingly reach the same conclusion as *Arnholt* and *Rockies Express*.  Indeed, this Court implicitly recognized the validity of *Arnholt* in *Columbia Gas Transmission LLC* v. *Crawford*, 267 F.R.D. 227 (N.D. Oh. 2010) (Gwin, J.).  In *Crawford*, Interden Industries asserted a claim for trespass, alleging, as here, "that Columbia Gas's escaped gas had entered into Interden's property without authorization, thereby causing damages to Interden."  267 F.R.D. at 228.

---

[4] The Court looked to Ohio state law principles in determining the measure of "just compensation" for condemnations under the NGA pursuant to its ruling in *Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement*, 962 F.2d 1192, 1999 (6th Cir. 1992), which held that federal condemnation under the NGA "borrows" the standards for computing "just compensation" under the laws of state in which the condemnation takes place.

- 9 -

Columbia moved to dismiss the trespass claim on the ground that "the NGA preempts state law claims for trespass." *Id.* This Court denied Columbia's motion on the ground that Interden's claim was "for Columbia Gas's alleged trespass *before* Columbia Gas secured federal authorization (in the form of the July 2009 FERC certificate)." *Id.* In so ruling, this Court distinguished *Arnholt*, noting the *Arnholt* court's conclusion that where a "tract of land is within [the] area covered by [a] FERC certificate of public convenience and necessity, 'Ohio has no power to regulate, directly or indirectly, [the] natural gas storage field.'" *Id.* (quoting *Arnholt*, 747 F. Supp. at 404). Here, the opposite conclusion is compelled: Plaintiffs specifically allege that their properties are within the FERC-certificated Medina Storage Field. *See* Am. Compl. (ECF No. 11) ¶ 41. Therefore, Plaintiffs' remedies in this case are "controlled and limited by federal substantive law," not Ohio law, and the Court should dismiss Plaintiffs' common law claims and their request for injunctive relief. *See Arnholt*, 747 F. Supp. at 404.[5]

_____

[5] In the intervening time since the filing of Columbia's initial motion to dismiss, the Supreme Court decided *OneOk, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015), in which the Court considered the question of whether the NGA preempted certain state-law antitrust claims arising out of *retail* sales. The Court held that the NGA did not occupy the field of conduct that the state antitrust laws regulated because the state laws were expressly aimed at the regulation of *retail* natural gas prices, which fall outside of the NGA's scope, despite the fact that the underlying conduct also had a tangential and indirect impact on FERC-regulated wholesale prices. *See* 135 S. Ct. at 1600. The Court's decision has no impact on the preemption analysis here. As a threshold matter, the decision arose in an entirely different factual circumstance, concerning conduct that impacted both state-regulated retail natural gas pricing and (indirectly) FERC-regulated wholesale pricing. Here, by contrast, Plaintiffs are attempting to use common law claims governed by state law to directly attack conduct that is clearly and directly FERC-regulated: namely, Columbia's operation of the Medina Storage Field. Moreover, the Court's analysis arose only in the context of field preemption, and the Court expressly declined to consider whether the state antitrust laws at issue conflicted with FERC's rate-setting practices. *See id.* at 1602 (noting that "the parties have not argued conflict pre-emption" and that "[c]onflict pre-emption may, of course, invalidate a state law even through field pre-emption does not."). Here, Plaintiffs' common law claims necessarily conflict with the NGA's comprehensive program of interstate gas transportation and storage regulation, and are therefore preempted on this separate basis as well.

2.     **Allowing Common Law Tort Remedies or Granting Plaintiffs' Request for Injunctive Relief Would Place This in Conflict with FERC's Authority under the NGA.**

Principles of "conflict preemption" also compel dismissal of Plaintiffs' state law claims.  Simply put, Plaintiffs' prosecution of their common law claims and request for injunctive relief, if successful, would give rise to an intolerable conflict between this Court's judgment and the requirements imposed by the NGA's "comprehensive scheme."  Columbia would be compelled either to disobey this Court's judgment, rendered upon principles of Ohio common law, or disobey FERC's commands pursuant to the NGA.  In such a situation, the law is clear: the Supremacy Clause requires the state common law claims to give way, in favor of the federal statutory scheme.  *See Darby v. A-Best Prods. Co.*, 811 N.E.2d 1117, 1123–25 (Ohio 2004) (recognizing that the Ohio Supreme Court has precluded state common law tort remedies pursuant to the Supremacy Clause where federal law has preemptive effect).

After all, the NGA *prohibits* a natural gas company from abandoning any service or facility without first requesting and obtaining FERC approval.  15 U.S.C. § 717f(b).  Columbia presently operates the Medina Storage Field pursuant to its FERC certificate, as Plaintiffs admit.  If the Court were to enter judgment for Plaintiffs on their common law causes of action, or worse, grant them the permanent injunction they seek, then Columbia would be placed in an impossible dilemma.  In such a case, this Court would have ordered Columbia to cease storing natural gas under Plaintiffs' property and/or pay monetary damages to Plaintiffs; however, Columbia cannot abandon all or any part of a storage field without first seeking approval from FERC.  Moreover, the Court would be ordering Columbia to pay monetary damages arising out of conduct that was expressly authorized by FERC.  Columbia would be forced to choose between placing itself in contempt of this Court or violating the NGA by abandoning a natural gas storage field without prior FERC approval (potentially subjecting itself to FERC sanction).

This sort of direct conflict between Ohio common law and the NGA is exactly what the U.S. Supreme Court focused on in *Schneidewind*, where it held that the NGA

preempted a Michigan law governing utilities' issuance of securities.  *See* 485 U.S. at 306–10.
Because this sort of "double bind" is exactly what the Supremacy Clause prohibits, the Court
should grant Columbia's Motion to Dismiss.

> 3.     **Plaintiffs Can Obtain a Full and Fair Remedy under the NGA,
> Without the Need for Common Law Tort Remedies.**

It is important to note that dismissing Plaintiffs' common law claims will not
leave them without a meaningful remedy.  As Columbia noted above, and Plaintiffs admit,
Plaintiffs can obtain "just compensation" through Columbia's pending condemnation claim.  *See*
Am. Compl. (ECF No. 11) ¶ 69.  In determining just compensation, the Court will apply Ohio
law, *see Columbia Gas Transmission Corp.*, 962 F.2d at 1999, under which:

> the landowner . . . is entitled both to the value of the taken land and to
> "damages" to the "residue" of the property.  Damages to the residue
> compensate for "any injury that may result to the remaining lands by
> reason of the construction of the proposed improvement," measured by the
> difference in the residue's fair market value before and after the taking.  A
> court determining fair market value should take into consideration "every
> element that can fairly enter into the question of value."

*Rockies Express*, 622 F.3d at 606–07 (citations omitted).[6]

In short, because Plaintiffs – by operation of Columbia's condemnation claim –
can already obtain full compensation for "'any injury' to the residue, taking into account 'every
element' of the question of value," *Rockies Express*, 622 F.3d at 607 (citations omitted), no need
exists for duplicative common law remedies, particularly where, as here, they threaten the

_____

[6] In arriving at a fair valuation, the Ohio Supreme Court – in the same context as the
present case – held that "fair market value," i.e., "the fair and reasonable amount which could be
attained in the open market at a voluntary sale," can be ascertained using a variety of "alternative
methods," including: (a) comparable sales; (b) the probable revenue from the sale of native gas
from beneath the property, "to the extent that its recovery would be economically justified;" (c)
the capitalized income from use of the property for gas storage; (d) depreciation in the market
value of the tract as a whole because of the presence of the storage easement; (e) the value of a
leasehold interest; and/or (f) other indications of the value of the storage easement from the
standpoint of the landowner.  *Columbia Gas Transmission Corp. v. An Exclusive Natural Gas
Storage Easement*, 620 N.E.2d 48, 49–50 (Ohio 1993).

integrity of a "comprehensive" federal regulatory regime.  Therefore, the Court should grant Columbia's motion and should dismiss Counts I and II.

### B. Plaintiffs Improperly Attempt to Mount a Collateral Attack on a FERC Certificate Governing the Medina Storage Field.

Plaintiffs' common law claims and their request for a permanent injunction are also legally insupportable because they seek to launch a collateral attack against FERC's findings and are beyond this Court's jurisdiction.  As the Sixth Circuit has observed, the NGA "sets forth a highly reticulated procedure for obtaining, and challenging, a FERC certificate."  *Id.* at 605.  First, "[a] party aggrieved by such an order may apply for rehearing before FERC."  *Id.* Thereafter, "the aggrieved party may petition for review" in the U.S. Court of Appeals with "exclusive" jurisdiction over FERC's order.  *Id.*  "Exclusive means exclusive, and the [NGA] nowhere permits an aggrieved party otherwise to pursue collateral review of a FERC certificate in state court or federal district court."  *Id.*

Here, Plaintiffs specifically allege that Columbia holds a FERC certificate for the Medina Storage Field.  Am. Compl. (ECF No. 11) ¶ 33.  Prior to the issuance of the FERC Certificate, FERC required Columbia to provide notice to all affected landowners and convened a hearing open to all interested parties.  *See* 18 C.F.R. §§ 157.6(d), 157.11; Am. Compl. (ECF No. 11) ¶ 31.  Thus, Plaintiffs (or their predecessors in title) had an opportunity to file any objections or take up any grievances with FERC prior to the grant of the certificate of public convenience and necessity, yet either chose not to do so or were unsuccessful.[7]

After evaluating the evidence, FERC granted Columbia a certificate for the operation of the Medina Storage Field, requiring Columbia "to operate the facilities within their actual geographical limits and incidentally thereto to assure its right of eminent domain for the acquisition of gas storage easements in these fields."  *Columbia Gas Transmission Corp.*, 41

---

[7] Whether Plaintiffs or their predecessors actually lodged any challenges with FERC is irrelevant.  Regardless, Plaintiffs cannot now bring a collateral attack by attempting to assert common law claims or seek a permanent injunction against Columbia.

F.E.R.C. ¶ 62,118, at ¶ 63,296 (Nov. 2, 1987).  In so ruling, FERC necessarily found (as FERC explicitly stated in the case of Columbia's Brinker, Holmes, Lucas, Pavonia, and Weaver Storage Fields) that Columbia's storage field operations are in the "present and future public convenience and necessity" and that "continuation of the existing operations . . . is necessary for Columbia to assure adequate service to its customers."  *Columbia Gas Transmission Corp.*, 35 F.E.R.C. ¶ 61,345, at 61,799 (June 17, 1986).

Plaintiffs may not seek to undermine these findings here.  In *Rockies Express*, for example, the plaintiffs sought declaratory and injunctive relief and an award of damages, claiming that a pipeline company's construction plans interfered with their property rights.  622 F.3d at 604.  The district court rejected the plaintiffs' efforts as an impermissible collateral attack on a FERC license, and the Court of Appeals affirmed.  *Id.*  This Court should hold likewise.

Moreover, if Plaintiffs' request for a permanent injunction prohibiting Columbia from storing gas beneath their property is granted, it would effectively prevent use of the entire Medina Storage Field.  Contrary to Plaintiffs' allegations that Columbia would not be harmed and that the public interest would be served if the injunction were granted, this would in fact have a substantial effect on Columbia's ability to deliver natural gas to millions of customers on the eastern seaboard.  Therefore, Counts I, II, and V should be dismissed.

## C.  Plaintiffs May Not Pursue Common Law Claims Where a Statutory Remedy Already Protects Their Interests.

A holding that the NGA preempts Plaintiffs' common law claims does not offend Ohio's sovereignty or disrupt the balance of federal-state relations, because the Court would reach the same result as a matter of Ohio common law, which holds that common law tort claims grounded in public policy considerations are "unavailable where there are adequate statutory remedies."  *Gray v. Kroger Corp.*, 804 F. Supp. 2d 623, 631 (S.D. Ohio 2011) (citing *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 531 (Ohio 2002)).  *See also Caplinger v. Uranium Disposition Servs.*, No. 2:08-cv-548, 2009 WL 367407 (S.D. Ohio Feb. 11, 2009) (dismissing common law wrongful discharge claim because plaintiff already had adequate statutory remedies

- 14 -

and did not need a common law tort claim to protect his interests); *Compton v. Swan Super Cleaners, Inc.*, No. 08-CV-002, 2008 WL 1924251 (S.D. Ohio Apr. 29, 2008) (dismissing plaintiff's common law tort claims because an existing statutory remedy adequately protects society's interest in punishing and deterring disability discrimination and public policy is not jeopardized by the lack of a common law tort remedy).

      The Middle District of Pennsylvania granted a motion to dismiss on similar grounds in a factually parallel case, *Fay v. Dominion Transmission, Inc.*, No. 3:10cv1384, 2011 WL 2632910 (M.D. Pa. July 5, 2011).  In *Fay*, as here, the plaintiffs alleged that that the defendant "stored and continues to store natural gas in or underneath plaintiff's real property and on properties adjacent to plaintiff's land" under theories that included trespass and unjust enrichment.  2011 WL 2632910, at *1–*2.  However, the court dismissed those claims, holding that when the "action complained of amounts to a de facto taking," eminent domain applies as the appropriate remedy.  *Id.* at *3.  Accordingly, the Court held that the "*sole* remedy for these matters" lies through eminent domain.  *Id.* (emphasis added).

      Here, as Columbia has already shown, Plaintiffs have a statutory remedy under the NGA that will provide them with just compensation for any deprivation of property rights that they can establish.  Under the circumstances, Ohio jurisprudence counsels against the invocation of common law remedies, and compels dismissal of Plaintiffs' state law claims.

     **D.**    **The Court Should Strike Plaintiffs' Claim for Punitive Damages.**

      Given that Plaintiffs' tort claims are fatally infirm, their associated plea for punitive damages should also fail.  As the Court recognized in *Arnholt*, punitive damages are not available in the absence of a cognizable tort claim.  747 F. Supp. at 404.  *See also* OHIO REV. CODE §§ 2315.21(A)(1), (C)(1)–(2) (limiting punitive damages to "tort actions," which are defined as "civil action[s] for damages or injury or loss to person or property").

      Moreover, even if there was some underlying tort that could support an award of punitive damages here, the Amended Complaint does not contain allegations sufficient to permit

Plaintiffs' claim for punitive damages to survive a motion to dismiss.  Under § 2315.21 of the Ohio Revised Code, "punitive damages may only be awarded in tort actions in which actual damages have been proven and actual malice is involved."  *Barker v. Netcare Corp.*, 768 N.E.2d 698, 709 (Ohio Ct. App. 2001).  "The actual malice necessary for punitive damages is (1) that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."  *Id.* (citation and quotations omitted).

No factual allegations in the Amended Complaint come close to meeting this standard.  Instead, Plaintiffs merely parrot the statutory "magic words."  Plaintiffs merely allege that "Columbia's continuing trespass was and is intentional and has been done with a conscious disregard for the property rights of Plaintiffs/Relators."  Am. Compl. (ECF No. 11) ¶ 49.  These are mere "labels and conclusions," "formulaic recitations" that are insufficient to state claims of relief under federal pleading standards.  *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Accordingly, Plaintiffs' request for punitive damages should also be dismissed.

### E.  Plaintiffs' Mandamus and Declaratory Judgment Claims, To the Extent They Seek Cognizable Forms of Relief, Are Moot.

Plaintiffs also bring claims for "Mandamus – Inverse Condemnation" (Count III) and for a declaratory judgment (Count IV).  As a threshold matter, this Court lacks jurisdiction to issue a writ of mandamus against Columbia, a private entity.  Pursuant to 28 U.S.C. § 1361, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an *officer or employee* of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361 (emphasis added).  It is evident, therefore, that writs of mandamus may only issue against *officers or employees* of the United States or its agencies and *not* against private parties.  *See Pankey v. Webster*, 816 F. Supp. 553, 558 (W.D. Mo. 1993) ("Obviously, an action under section 1361 will not lie unless the defendants are officers or employees of the United States or a federal agency.").  Here, Plaintiffs bring a claim for "Mandamus – Inverse

- 16 -

Condemnation" despite the fact that Columbia is evidently not an officer or employee of the United States or its agencies.  Plaintiffs' request for a writ of mandamus therefore fails to state a cognizable claim for relief.

In any event, to the extent Plaintiffs wish to compel Columbia to commence condemnation proceedings against them, Columbia has already done so.  *See* Second Amended Counterclaim, *Wilson* (ECF No. 288).[8]  Plaintiffs have therefore already obtained the very relief they seek.  By the same token, Plaintiffs' request for a declaratory judgment has been rendered moot by Columbia's commencement of condemnation proceedings.  In seeking to condemn Plaintiffs' properties, Columbia has necessarily admitted that Plaintiffs "are entitled to just compensation for Columbia's use of their properties for storage gas[.]"  Am. Compl. (ECF No. 11) ¶ 74; *see* Second Amended Counterclaim, *Wilson* (ECF No. 288) ¶ 1 ("Columbia . . . files this action for . . . the ascertainment and award of just compensation and damages to the real property owners[.]").  Because Columbia admits that Plaintiffs are entitled to just compensation, there is no "actual controversy" regarding the parties' rights, 28 U.S.C. § 2201, and therefore nothing to be decided through a declaratory judgment.

Simply put, Columbia's commencement of condemnation proceedings have given Plaintiffs precisely the relief they seek through Counts III and IV and there is thus nothing more for this Court to do.

**V.     Oral Argument May Assist The Court In Resolving These Questions.**

Columbia asks the Court to schedule oral argument on this Motion, so that it may directly address any questions that the Court may have, given that this motion presents, *inter alia*, a significant question of federal preemption.

---

[8] As noted, Plaintiffs and Columbia have filed a joint motion in *Wilson* seeking to have Columbia's condemnation action against Plaintiffs severed from *Wilson* and transferred to the Northern District.  *See* Joint Motion to Sever and Transfer, *Wilson* (ECF No. 789).

## VI.     Conclusion

As the foregoing demonstrates, Plaintiffs' common law trespass and unjust enrichment claims are preempted by the NGA and the ability to issue the injunctive relief requested is ultimately outside this Court's jurisdiction.  Plaintiffs' mandamus claim fails because Columbia is not an officer or employee of the United States, and in any event both Plaintiffs' mandamus claim and their declaratory judgment claim have been rendered moot by Columbia's condemnation proceeding.  Accordingly, Columbia respectfully requests that the Court dismiss the Plaintiffs' First Amended Complaint with prejudice.

Respectfully submitted,

*/s/ Paul K. Stockman*
Paul K. Stockman
Branden P. Moore
MCGUIREWOODS LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 667-6000
Telecopier: (412) 667-6050
pstockman@mcguirewoods.com
bpmoore@mcguirewoods.com

Jodie N. Herrmann (admitted *pro hac vice*)
MCGUIREWOODS LLP
201 North Tryon Street, Suite 3000
Charlotte, North Carolina 28202
jherrmann@mcguirewoods.com

*Counsel for Columbia Gas Transmission, LLC*

Dated:  May 27, 2016

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1(f)</u>

I hereby certify that the length of the Memorandum in Support of Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint complies with the page limits set forth in Northern District of Ohio Local Civil Rule 7.1(f) because this case has not been assigned to a particular track and the memorandum does not exceed twenty (20) pages.


*/s/ Paul K. Stockman*
Paul K. Stockman

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 27, 2016, a copy of the foregoing Memorandum in Support of Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

<u>*/s/ Paul K. Stockman*</u>
Paul K. Stockman