IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD BAATZ, et. al., | ) | Case No. 1:14-cv-505 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| COLUMBIA GAS TRANSMISSION, LLC., | ) | |
| | ) | **ORDER ON DEFENDANT'S** |
| Defendant. | ) | **MOTION TO DISMISS** |
| | ) | |

**I.     Introduction**

Defendant Columbia Gas Transmission, LLC ("Columbia") has moved to dismiss plaintiffs' ("Medina Landowners") Second Amended Complaint.[1]  The Second Amended Complaint asserts five causes of action: trespass (Count One), unjust enrichment (Count Two), mandamus/inverse condemnation (Count Three), declaratory judgment (Count Four), and permanent injunction (Count Five).  ECF Doc. No. 46, ¶¶52-91.  Columbia asserts that the trespass, unjust enrichment, and permanent injunction claims are: (i) preempted by the Natural Gas Act, 15 U.S.C. §717 *et. seq.* ("NGA"); (ii) barred as impermissible attacks on a certificate of public convenience and necessity issued by the Federal Energy Regulatory Commission ("FERC"); and (iii) precluded as a matter of law because of an existing statutory remedy.

---

[1] Although the Motion to Dismiss was initially filed with respect to the First Amended Complaint (Doc. 11), on October 5, 2016, this Court ordered that the briefing on the Motion to Dismiss will be treated as briefing as to the Second Amended Complaint (ECF Doc. No. 46) (The Second Amended Complaint merely added additional parties and did not change the substance of the First Amended Complaint).  All references and most citations to the complaint in this order will correspond with the paragraphs in the Second Amended Complaint.

Columbia further argues that the mandamus/inverse condemnation and declaratory judgment claims have been rendered moot in light of Columbia's pending condemnation claims in *Columbia Gas Transmission, LLC, v. Brianne Booth, et. al.*, case no. 1:16-cv-1418. Columbia alternatively moves to strike the request for punitive damages, arguing that it was not properly pleaded.

Columbia's motion to dismiss Counts One and Two will be DENIED. The motion to dismiss Counts Three, Four, and Five will be GRANTED. Columbia's motion to strike the punitive damages claim will be DENIED.

**II.     Standard for Rule 12(b)(6) Motions**

Motions to dismiss under Rule 12(b)(6), Fed. R. Civ. P., test the legal sufficiency of a complaint. A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations of a pleading must show that the claim to relief if not based on speculation. *Id.* at 555. The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Id.* "Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964–65. In ruling on a motion to dismiss, a court may consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to

dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice. *Whittaker v. Deutsche Bank Nat'l Trust Co.,* 605 F.Supp.2d 914, 924–25 (N.D. Ohio 2009).

### III. Factual Background[2]

Columbia operates an extensive interstate natural gas transportation and storage system that includes one of North America's largest underground natural gas storage systems (37 storage fields in four states with nearly 600 billion cubic feet in total capacity). The Medina Storage Field is one of those facilities. The Medina Storage Field exists within a naturally occurring geologic formation located below the earth's surface. Columbia injects natural gas into these storage fields during the summer months when gas demand is low and withdraws the storage gas during the winter months when demand is high.

The Natural Gas Act ("NGA"), 15 U.S.C. § 717 *et seq.* regulates Columbia's interstate natural gas operations. Pursuant to the NGA, Columbia obtained a certificate of public convenience and necessity ("Certificate") from ("FERC") for the storage of natural gas in the Medina Storage Field. The NGA grants the right of eminent domain to FERC certificate holders as follows:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with

---

[2] These facts are set forth in Plaintiff's Second Amended Complaint (ECF Doc. No. 46, ¶¶26-51).

the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided,* That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

15 U.S.C. §717f(h). Columbia offered each of the Medina Landowners $250.00 per lot in return for the grant of an easement permitting the use of their properties for gas storage.[3] None of the Medina Landowners accepted this offer.

## IV.   Procedural Background

The Medina Landowners instituted this action on March 5, 2014. Doc. 1. The Medina Landowners claims were similar to those alleged in a previously-filed putative class action case in the Southern District of Ohio [*Wilson et al v. Columbia Gas Transmission, LLC*, Case No. 2:12cv01203 (S.D. Ohio 2012)]. None of the plaintiffs in this case was an original party in *Wilson*; but Columbia was the defendant in both cases. On April 22, 2014, Columbia filed an amended counterclaim in *Wilson* joining the Medina Landowners as counterclaim defendants. The next day, Columbia moved to dismiss the instant case, asserting that *Wilson*, the first filed case, had priority. On March 5, 2015, Judge Wells granted Columbia's motion to dismiss. ECF Doc. Nos. 18, 19. On February 24, 2016, the Sixth Circuit reversed the dismissal and remanded the case. ECF Doc. No. 22. Taking a suggestion by the court of appeals, Columbia moved to stay this case. ECF Doc. No. 27. On May 4, 2016, Judge Gwin[4] denied defendant's motion to

---

[3] In ¶¶ 3-31 of the Second Amended Complaint (Doc. 46), plaintiffs allege that their respective properties are within the "certificated boundaries" of the Medina Storage Field. Defendant admitted these allegations, at least with respect to the parties in the First Amended Complaint. (Doc. 34, ¶3-24) However, plaintiffs later stated that the certificated boundaries are known only to FERC and the state of Ohio and otherwise maintained in secrecy. ECF Doc. No. 46, ¶46. Defendant admitted that FERC and the state of Ohio are provided maps showing the certificated boundaries of Columbia's Ohio storage fields and asserts that the maps are not available to the general public. ECF Doc. No. 34, ¶39. Thus, a reasonable inference from these allegations is that the Medina Landowners would not have known whether their properties were within the boundaries authorized by Columbia's FERC certificate.

[4] The action was reassigned to Judge James S. Gwin after the retirement of Judge Wells.

stay due, in part, to delays in *Wilson* and the appropriateness of venue in the Northern District of Ohio.

On May 26, 2016, Columbia and the Medina Landowners jointly requested that their claims in *Wilson* be severed and transferred to the Northern District of Ohio. That request was granted and on June 10, 2016, the case was transferred to the Northern District of Ohio and recaptioned *Columbia Gas, LLC v. Booth, et. al.*, 1:16cv01418. Shortly thereafter, Columbia filed an Amended Complaint in condemnation against the Medina Landowners in *Booth*.

On May 27, 2016, one day after the parties' joint request to sever and transfer their claims in *Wilson*, Columbia filed the instant motion to dismiss. ECF Doc. Nos. 32, 33. As noted above, Columbia asserts, in part, that certain claims in this case have been mooted by its assertion of an NGA condemnation claim in *Booth*. Plaintiffs filed an Opposition (ECF Doc. No. 42) and Columbia filed a Reply (ECF Doc. No. 44). On August 19, 2016, this Court ordered that this matter and *Booth* be consolidated for pretrial proceedings. (ECF Doc. No. 49)

V.     **Overview of Parties' Arguments**

The Medina Landowners primarily assert that Columbia knowingly stored gas underneath their properties for an indeterminate time without giving prior notice to the landowners, without receiving their permission, and without paying them any compensation. ECF Doc. No. 46, ¶¶ 47-48. The Complaint does not allege when the storage began but does assert that it occurred "before or after obtaining a FERC certificate" and prior to obtaining the right of eminent domain pursuant to §717f(h) of the NGA. Id., ¶53-55. The Medina Landowners claim that Columbia trespassed and is being unjustly enriched by the unauthorized storage of natural gas on their properties. Id. at ¶¶53-61. The landowners seek to enjoin Columbia from using their properties for storage without payment of just compensation. Id. at ¶¶82-91.

5

Columbia responds that the Medina Landowners claims are preempted under theories of field and conflict preemption and that the NGA already provides an adequate and exclusive statutory remedy to compensate the Medina Landowners for their alleged damages. ECF Doc. No. 33, Page ID# 643, 648-54. Columbia also contends that the Medina Landowners' complaint mounts an impermissible collateral attack on a FERC certificate. Id. at 655-56. Finally, Columbia asserts that the Medina Landowner's mandatory injunction and declaratory judgment claims were mooted by Columbia's condemnation filing in *Booth*. Id. at 658-59.

## VI. Counts One and Two (Trespass and Unjust Enrichment)

The Medina Landowners allege common law claims for trespass (Count One) and unjust enrichment (Count Two).
ECF Doc. No. 46, Page ID# 748-49. Columbia asserts that these claims are impliedly preempted by the NGA under theories of conflict and field preemption. ECF Doc. No. 33, Page ID# 648-55. Columbia also argues that allowing common law tort remedies would place this Court's orders in conflict with FERC's authority under the NGA; and it contends that plaintiffs can obtain a full and fair remedy under the NGA. Id.

### A. Field and Conflict Preemption

The Supremacy Clause of the United States Constitution, provides that the "Laws of the United States . . . shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. The Supremacy Clause requires the conclusion that certain federal laws preempt state laws relating to the same topic. The U.S. Supreme Court has recognized two ways in which federal laws that do not have express preemption clauses may preempt state law by implication: field preemption and conflict preemption. Field preemption occurs when Congress' regulation in a field "is so pervasive or the federal interest is so dominant that an intent can be inferred for federal law to

occupy the field exclusively." *R.R. Ventures, Inc. v Surface Transp. Bd.*, 299 F.3d 523, 561 (6th Cir. 2002). Conflict preemption occurs when the state laws in question "conflict [with federal law so] that it is impossible for a party to comply with both laws simultaneously, or where enforcement of the state law would hinder or frustrate the full purposes and objectives of the federal law." *In re Schafer*, 689 F.3d 601, 614 (6th Cir. 2012). "Federal preemption is an affirmative defense upon which the [party asserting preemption] bear[s] the burden of proof." *Brown v. Earthboard Sports USA, Inc.,* 481 F.3d 901, 912 (6th Cir.2007) (quoting *Fifth Third Bank v. CSX Corp.,* 415 F.3d 741, 745 (7th Cir.2005)).

### 1. Field Preemption

The NGA contains no express preemption clause. *See e.g.*, *Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kansas*, 489 U.S. 493, 509, 109 S. Ct. 1262, 1273, 103 L. Ed. 2d 509 (1989). *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 299, 108 S. Ct. 1145, 1150, 99 L. Ed. 2d 316 (1988). Even in the absence of express statutory language, however, Congress may indicate intent to occupy a given field to such a degree that state law on the same topic is preempted. *Id.* A purpose to preempt may be inferred when the pervasiveness of the federal law precludes supplementation by the States; when the federal interest in the field is sufficiently dominant, or when "the object sought to be obtained by the federal law and the character of obligations imposed by it ... reveal the same purpose." *Id.* at 299-300; quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

Columbia broadly asserts that the field occupied by NGA is: "the Field of Matters Relating to the Operation of Interstate Gas Storage Fields." ECF Doc. No. 33, Page ID# 649.Columbia made the same preemption arguments in a motion to dismiss in *Wilson* before its

7

claims were severed and transferred to this court.[5] In that case, Judge James J. Graham denied Columbia's motion, holding:

> [T]he complaint alleges that Columbia committed the acts of trespass and conversion without notifying plaintiffs and thus without ever attempting to reach an agreement as to compensation. Columbia, in its counterclaim and its briefing, expressly denies this assertion. This factual issue is potentially an important one in the preemption analysis, as the lone case directly in plaintiffs' favor was based a factual finding that the gas company had not followed § 717f(h)'s requirement that the certificate holder attempt to negotiate an agreement with the landowner before either entering the land or seeking condemnation. *See Humphries v. Williams Natural Gas Co.,* 48 F.Supp.2d 1276, 1279 (D. Kan. 1999) (denying gas company's motion for summary judgment and holding that the landowner's trespass action was not preempted by NGA because the gas company, despite having a certificate that included plaintiff's property, failed to "scrupulously abide by the terms of § 717f(h)"). Given that § 717f(h) does not give a certificate holder the right to immediate possession, *see Transwestern Pipeline Co. v. 17.19 Acres of Property Located in Maricopa County*, 550 F.3d 770, 774-75 (9th Cir. 2008), and given the complaint's allegation that Columbia has failed to abide by the negotiation requirement of § 717f(h), the court again finds that Columbia's argument for preemption is unavailing at this stage.

*Wilson v. Columbia Gas Transmission, LLC.*, 2:12-cv-1203, Doc. 256, Page ID # 2772-74. This court finds Judge Graham's analysis persuasive, particularly since the Medina Landowners' claims here are almost identical to the landowners' claims in *Wilson*.[6] This Court finds no compelling reason to conclude differently.

---

[5] *Wilson v. Columbia Gas Transmission, LLC.*, 2:12-cv-1203, ECF Doc. No. 13.

[6] Columbia attempts to distinguish the *Wilson* court's denial of a similar motion to dismiss by asserting that the *Wilson* complaint left open the possibility of whether the landowners' properties in that case were within the FERC certificated boundaries whereas it asserts that the Medina Landowners, in this case, "specifically allege that their property is within the Medina Storage Field." ECF Doc. No. 44, Page ID# 729. The landowners in *Wilson* stated that "upon information and belief" their properties lie within the certificated boundaries of Columbia's natural gas storage field (12-1203, Doc. 2, ¶¶25-28). Here, the Medina Landowners did not use the "upon information and belief" qualification when they averred that their properties lie within the certificated boundaries of Columbia's natural gas storage field (Doc. 11, ¶¶3-24; Doc. 46. ¶¶3-31). However, the Medina Landowners also later asserted that they were unaware of the certificated boundaries of the storage fields because those borders are maintained by Columbia in secrecy -- a fact which Columbia admitted in its answer. (Doc. 46, ¶87 and Doc. 34, ¶39 "Columbia admits that FERC and the State of Ohio are provided with maps showing the certificated boundaries of its Ohio storage fields. Columbia further admits that it does not make maps of its Ohio natural gas storage fields available to the general public.") Thus, although Columbia argues that the Medina Landowners "specifically admit that their land lies within the boundaries of the Medina Storage Field" this is not

8

After Columbia failed to secure the dismissal of *Wilson*, the U.S. Supreme Court made a field preemption ruling that bolstered the Judge Graham's *Wilson* conclusion. In *Oneok, Inc. v. Learjet, Inc.*, __ U.S. __, 135 S. Ct. 1591, 1597-98, 191 L. Ed. 2d 511 (2015), the Supreme Court ruled that the NGA does not occupy the same field of conduct that state antitrust laws regulate. The Court stated:

> As we have repeatedly stressed, **the Natural Gas Act "was drawn with meticulous regard for the continued exercise of state power, not to handicap or dilute it in any way."** *Panhandle Eastern Pipe Line Co. v. Public Serv. Comm'n of Ind.*, 332 U.S. 507, 517–518, 68 S.Ct. 190, 92 L.Ed.128 (1947); *see also Northwest Central*, 489 U.S., at 511, 109 S.Ct. 1262 (the "legislative history of the [Act] is replete with assurances that the Act 'takes nothing from the State [regulatory] commissions'" (quoting 81 Cong. Rec. 6721 (1937))…
>
> \*\*\*
>
> **Antitrust laws, like blue sky laws, are not aimed at natural-gas companies in particular, but rather all businesses in the marketplace. See ibid. They are far broader in their application than, for example, the regulations at issue in *Northern Natural*, which applied only to entities buying gas from fields within the State. See 372 U.S., at 85–86, n. 1, 83 S.Ct. 646; contra, post, at 1605 – 1606 (stating that *Northern Natural* concerned "background market conditions"). This broad applicability of state antitrust law supports a finding of no pre-emption here.**
>
> Petitioners and the dissent argue that there is, or should be, a clear division between areas of state and federal authority in natural-gas regulation. See Brief for Petitioners 18; *post,* at 1606. But that Platonic ideal does not describe the natural gas regulatory world. Suppose FERC, when setting wholesale rates in the former cost-of-service rate-making days, had denied cost recovery for pipelines' failure to recycle. Would that fact deny States the power to enact and apply recycling laws? These state laws might well raise pipelines' operating costs, and thus the costs of wholesale natural gas transportation. But in *Northwest Central* we said that "[t]o find field pre-emption of [state] regulation merely because purchasers' costs and hence rates might be affected would be largely to nullify ... § 1(b)." 489 U.S., at 514, 109 S.Ct. 1262.
>
> \*\*\*

---

completely accurate. Viewing the Complaint as a whole, and considering Columbia's own admission that the certificated boundaries are maintained in secrecy, it is reasonable to infer that the certificated boundaries of the Medina Storage Field were not known to the landowners when they filed their amended complaint.

> **States have a "long history of" providing "common-law and statutory remedies against monopolies and unfair business practices."** *ARC America,* 490 U.S., at 101, 109 S.Ct. 1661; see also *Watson v. Buck,* 313 U.S. 387, 404, 61 S.Ct. 962, 85 L.Ed. 1416 (1941) (noting the States' "long-recognized power to regulate combinations in restraint of trade"). Respondents' state-law antitrust suits relied on this well established state power.

*Id.* at 1599. (emphasis added)

Similar to antitrust and blue sky laws that the Supreme Court held are not field preempted by the NGA, the common law tort claims in this case also arise from well-established state power with broad applicability. In a related setting, the Supreme Court expressly recognized the "states' traditional authority to provide tort remedies to its citizens." *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 248, 104 S. Ct. 615, 621, 78 L. Ed. 2d 443 (1984). In *Silkwood*, the Supreme Court found that although the Nuclear Regulatory Commission regulated nuclear safety, common law tort claims were not preempted by the Atomic Energy Act. Common law tort laws were not established to regulate natural-gas companies but all individuals and businesses in all settings. Such laws arise from a state's traditional authority.

Moreover, there is a presumption against pre-emption, particularly in fields in which state laws have traditionally operated. *See Wyeth v. Levine*, 555 U.S. 555, 565, 129 S. Ct. 1187, 1194–95, 173 L. Ed. 2d 51 (2009).

> "[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (internal quotation marks omitted); see *Retail Clerks v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963). Second, "[i]n all pre-emption cases, and particularly in those in which Congress has 'legislated ... in a field which the States have traditionally occupied,' ... we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " *Lohr,* 518 U.S., at 485, 116 S.Ct. 2240 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).

*Id.* Congress did not express a clear intent to displace state tort laws when it enacted the NGA. Rather, as the Supreme Court reaffirmed in *Oneok*, the NGA "was drawn with meticulous regard

for the continued exercise of state power, not to handicap or dilute it in any way." 135 S. Ct. at 1599. The Supreme Court has said that where "coordinate state and federal efforts exist within a complementary administrative framework, and in the pursuit of common purposes, the case for federal pre-emption becomes a less persuasive one." *New York State Dept. of Social Servs. v. Dublino,* 413 U.S. 405, 421, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973).

The unreported Sixth Circuit decision in *Bowman v. Columbia Gas Transmission Corp.*, 850 F.2d 692 at *1, 1988 WL 68890 (6th Cir. 1988) is also instructive on this issue. In *Bowman*, the Sixth Circuit upheld an award of punitive damages for trespass in a case alleging similar facts, finding that the actual malice standard for punitive damages was demonstrated where Columbia willfully concealed its natural gas storage on the plaintiff's property without compensation for twenty years. Although the *Bowman* majority declined to reach the issue of preemption under the NGA, concluding that the issue had not been preserved for appellate review, the Sixth Circuit found the requirement that actual malice be demonstrated was "easily satisfied." Additionally, in a concurring opinion, Judge Ryan stated:

> Columbia's motion for partial summary judgment was based on the theory that Maxine Bowman's sole recourse was an action for inverse condemnation, and that she was, therefore, precluded from pursuing her state law trespass claim. The value to Columbia of such limitation is that punitive damages, permissible in a trespass claim under Ohio law, are not available in an inverse condemnation action under federal law. The district court, as a matter of law, correctly rejected this theory.

*Id*. at *3.

Columbia's request for dismissal of the Medina Landowner's tort claims based on a field preemption argument will be denied.[7]

---

[7] Columbia's reliance on this Court's post-*Bowman* decision in *Arnholt* is not persuasive. *Columbia Gas Transmission Corp. v. An Exclusive Nat. Gas Storage Easement in Clinton Subterranean Geological Formation Beneath 80 Acres, Worthington Twp., Richland Cty., Ohio* ["*Arnholt*"], 747 F. Supp. 401 (N.D. Ohio 1990). *Arnholt* is distinguishable from this matter in several ways (e.g., *Arnholt* was decided

11

## 2. Conflict Preemption

Columbia's contention that the Medina Landowners claims should be dismissed under a conflict preemption theory also fails. Columbia asserts that the Medina Landowner's common law claims and request for injunctive relief conflict with 15 U.S.C. §717f(b) of the NGA which prohibits a natural gas company from abandoning any service or facility without first requesting FERC approval:

> (b) Abandonment of facilities or services; approval of Commission
> No natural-gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission first had and obtained, after due hearing, and a finding by the Commission that the available supply of natural gas is depleted to the extent that the continuance of service is unwarranted, or that the present or future public convenience or necessity permit such abandonment.

---

on a motion for summary judgment rather than a motion to dismiss; the landowners in *Arnholt* were permitted to amend their trespass claim to a claim for inverse condemnation – here Columbia argues that neither type of claim can be maintained). It should also be noted that Judge Dowd "made several modifications" to his September 25, 1990, *Arnholt* opinion and even held a second hearing on the same motion for summary judgment in November 1990. *Columbia Gas Transm v. Natrl Gas Stor 80, et al*, 5:88-cv-2935, ECF Doc. Nos. 58, 63. The *Arnholt* case settled before trial and, because more than 25 years has passed since the issuance of these orders, the clerk of courts no longer maintains records of these documents. However, the docket history suggests that the issues in Judge Dowd's September 1990 order, on which Columbia relies, were not completely resolved.

Further, this court, as well as other several federal courts, has subsequently distinguished *Arnholt*. *See e.g., Columbia Gas Transmission, LLC. v. Crawford*, 267 F.R.D. 227, 228 (N.D. Ohio 2010) (finding trespass claim was not preempted, at least for the time period prior to obtaining FERC certification.); *Am. Energy Corp. v. Texas E. Transmission, LP,* 701 F. Supp.2d 921, 932 (S.D. Ohio 2010)(stating that "neither the PSA [Pipeline Safety Act], nor the NGA, prevents claims based on state contract, tort, or property law."); *Van Scyoc v. Equitrans, L.P*., No. 2:13-CV-01735, 2015 WL 1346872, at *7 (W.D. Pa. Mar. 23, 2015) (concluding that landowner trespass and unjust enrichment claims were not completely preempted by the NGA); *Humphries v. Williams Nat. Gas Co*., 48 F. Supp. 2d 1276, 1279 (D. Kan. 1999) (finding the NGA did not preempt trespass and unlawful taking claims prior to the date the gas company filed its condemnation action); *Abramson v. Florida Gas Transmission Co*., 909 F. Supp. 410, 416 (E.D. La. 1995) (concluding that state contract, property law, and tort claims were not completely preempted by the NGA). In fact, in *Crawford*, this Court distinguished *Arnholt* by finding that claims for trespass occurring *prior* to FERC certification were permissible. Although Columbia asserts that the Medina Landowners do not allege occupation of their properties prior to the issuance of the FERC certificate (ECF Doc. No. 44 at Page ID# 726), that is not an accurate representation of the Complaint. The Complaint alleges that Columbia trespassed on the landowner's properties for an indeterminate period "before or after obtaining a FERC certificate." ECF Doc. No. 46, Page ID# 748 at ¶55. In consideration of all of the above, *Arnholt* is distinguishable and does not compel a different result.

12

Columbia asserts:

> If the Court were to enter judgment for Plaintiffs on their common law causes of action, or worse, grant them the permanent injunction they seek, then Columbia would be placed in an impossible dilemma. In such a case, this Court would have ordered Columbia to cease storing natural gas under Plaintiffs' property and/or pay monetary damages to Plaintiffs; however, Columbia cannot abandon all or any part of a storage field without first seeking approval from FERC. Moreover, the Court would be ordering Columbia to pay monetary damages arising out of conduct that was expressly authorized by FERC.

ECF Doc. No 33, Page ID# 653. Columbia's argument conflates the Medina Landowners' tort claims with their claim for injunctive relief. If Columbia were found liable for money damages on tort or unjust enrichment claims arising from its actions prior to obtaining FERC certification or from its failure to comply with the NGA after the Medina Field was certified, that would not require Columbia to abandon its facilities or services in violation of §717f(b). The argument that the paying money damages would somehow violate §717f(b) is without merit.[8]

Columbia also argues that if this Court allows the tort claims to proceed, it could be forced to pay monetary damages arising out of conduct expressly authorized by FERC. However, §717f(h) provides that a FERC certificate holder "*may acquire* [a right-of-way] *by the exercise of the right of eminent domain in the district court* of the United States…" (emphasis added). Nothing in the NGA authorizes what Columbia has done here. Instead the NGA authorizes the seizure of property rights by eminent domain only by filing an action in the district court. FERC does not authorize pre-condemnation entry onto the land. And neither FERC nor the NGA authorize a natural gas storage company to obtain certification, enter upon land and to use the land secretly without paying the compensation required by statute. Columbia's motion to dismiss Count One and Two based on the argument that the Medina Landowner's claims conflict with NGA §717f(b) is denied.

---

[8] On the other hand, granting an injunction to cease operations could potentially conflict with §717f(b); however, this Court need not decide that issue as is more fully discussed in a later section of this order addressing the injunction claim.

An important issue in the preemption analysis is whether the party seeking to benefit from the alleged preemptive effect of a federal law must actually comply with that law in order to succeed in its argument that a state law is preempted by the federal statute. To put it another way, may a party who has ignored the requirements of a federal law to the detriment of the rights of another be able to use that law to preempt a competing state law remedy otherwise available to the injured party? Here, plaintiffs argue that Columbia's failure to comply with the requirements of the NGA should prevent the NGA from supplanting their state law claims under the circumstances. Because the court has found that Columbia's preemption arguments fail as a matter of law under the facts of this case, the court need not determine whether Columbia's arguments also must fail as a result of Columbia's failure to comply with the requirements of the NGA.

The court will deny Columbia's motion to dismiss on preemption grounds.

### B. Full and Fair Remedy

Columbia next contends that the Medina Landowners can obtain full recovery for their damages through the *Booth* condemnation proceedings because the Court's just compensation calculation in *Booth* can include "damages to the residue" of a property. ECF Doc. No. 33, Page ID# 654-55. Courts reviewing FERC condemnation actions must apply "the law of the state in which the condemned property is located in determining the amount of compensation due." *Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement,* 962 F.2d 1192, 1199 (6th Cir.1992). Under Ohio law, the landowner in an eminent domain action is entitled to both the value of the taken land and to "damages" to the "residue" of the property. *City of Norwood v. Forest Converting Co.,* 16 Ohio App.3d 411, 476 N.E.2d 695, 700 (1984). Damages to the residue compensate for "any injury that may result to the remaining lands by reason of the

14

construction of the proposed improvement," measured by the difference in the residue's fair market value before and after the taking. *Id.*

Here, the Medina Landowners seek damages because Columbia trespassed on their lands. They do not seek damages based on a residual injury to their lands "by reason of the construction of the proposed improvement." In cases interpreting this language, the injury was collateral damage to the value or use of the land resulting from the construction of the facility. See e.g., *Am. Energy Corp. v. Rockies Exp. Pipeline LLC*, 622 F.3d 602, 606-07 (6th Cir. 2010) (Determining that a claim for damages from the construction of a pipeline would be compensable in condemnation under "damages to the residue"); *City of Norwood v. Forest Converting Co.,* 16 Ohio App.3d 411, 476 N.E.2d 695, 700 (1984) ("damages to the residue" included cracks and physical damage to a building from construction of the improvement.). Columbia's cases do not support the conclusion that paying for the value of an easement in 2016 after the property has been used without compensation for decades can somehow fairly incorporate damages for the trespass.

Columbia's motion to dismiss Count One and Count Two on the ground that damages for trespass can be awarded using NGA just compensation procedures will be denied.

## VII. Counts Three, Four, and Five (Mandamus - Inverse Condemnation; Declaratory Judgment; Injunctive Relief)

The Medina Landowners seek various equitable remedies in Counts Three, Four, and Five all with the purpose of ensuring that just compensation is paid for the taking of their properties. ECF Doc. No. 46, ¶¶62-90. Columbia asserts that these claims have been rendered moot by the filing of its amended complaint in condemnation in *Booth*. Columbia also asserts that if the injunction claim were allowed to proceed it would constitute an impermissible attack on a FERC certificate. ECF Doc. No. 33, Page ID# 655-56.

The Medina Landowners admit that the "condemnation claim is an appropriate substitute" for their claims for mandamus/inverse condemnation, declaratory judgment, and injunctive relief. ECF Doc. No. 42, Page ID# 719. However, they argue that this court should not dismiss these claims because of procedural defects with the *Booth* amended complaint. Id. However, this court previously rejected the Medina Landowners' those arguments in denying the motion to dismiss the *Booth* amended complaint. In addition the court has concluded that Columbia has the substantive right to condemn the easements it has prayed for as a matter of law.[9] Because the Medina Landowners concede that a properly commenced condemnation claim is an appropriate substitute and moots their claims for mandamus/inverse condemnation, declaratory judgment, and injunctive relief, and because the court has already ruled that the condemnation action in *Booth* was commenced appropriately, Columbia's request to dismiss Counts Three, Four, and Five will be granted.

**VIII. Request to Strike Punitive Damages**

Finally, Columbia argues that even if the Medina Landowners' tort claims survive a motion to dismiss, their request for punitive damages should still be dismissed at this stage because the allegations in the Amended Complaint fail to plead actual malice sufficiently. Columbia relies on *Barker v. Netcare Corp.*, 2001-Ohio-3975, ¶ 55, 147 Ohio App. 3d 1, 15, 768 N.E.2d 698, 709 in support of its argument. ECF Doc. No. 33, Page ID# 658. *Barker* can be distinguished because it was decided on a JNOV motion, not a motion to dismiss. Further, *Barker* specified that "[A]ctual malice can be inferred from conduct and surrounding circumstances which may be characterized as reckless, wanton, willful or gross." *Barker*, 768 N.Ed.2d at 709-710; quoting *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 37, 543

---

[9] An order granting in part Columbia's motion for partial summary judgment in *Booth* is being filed contemporaneously to this order.

N.E.2d 464.  Here, the issue is whether the Medina Landowners have met the minimum pleading requirements for a prayer for punitive damages.  The Amended Complaint asserts that Columbia stored natural gas beneath their properties before obtaining the storage rights to do so either by negotiation or eminent domain, that Columbia's invasion onto their properties constitutes a continuing trespass; that such trespass was and is intentional and has been done with conscious disregard for their property rights; and, as a result of the trespass, the landowners have suffered and will continue to suffer damages.  Amend. Cmplt., ECF Doc. 11, ¶¶47-50.  Accepting these factual allegations as true and making all reasonable inferences in plaintiffs' favor, particularly considering the import of the Sixth Circuit's *Bowman* decision, plaintiffs' allegations are sufficient to state a plausible prayer for entitlement to punitive damages.

## IX.   Conclusion

Columbia's motion to dismiss (ECF Doc. Nos. 32, 33) is GRANTED in part and DENIED in part.  Columbia's motion to dismiss Counts One and Two is DENIED. Columbia's motion to dismiss Counts Three, Four, and Five is GRANTED.  Columbia's motion to strike the Medina Landowners' prayer for punitive damages claim is DENIED.

IT IS SO ORDERED.

Dated: December 22, 2016

Thomas M. Parker
United States Magistrate Judge