IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD BAATZ, et. al., | ) | Case No. 1:14-cv-505 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| COLUMBIA GAS TRANSMISSION, LLC, | ) | |
| | ) | **AMENDED MEMORANDUM** |
| Defendant. | ) | **OF OPINION AND ORDER** |
| | ) | |

## I.      Introduction

Plaintiffs in this action are the owners of residential lots in Medina County, Ohio ("Landowners").  Defendant Columbia Gas Transmission, LLC ("Columbia") is a wholesale producer and distributor of natural gas which established a 10,000 acre underground natural gas storage facility in the Clinton sandstone formation in Medina County (the "Medina Storage Field").  Columbia was authorized – and required – to construct and operate the Medina Storage Field by the former Federal Power Commission in 1958, and it has stored natural gas in that facility since 1959.  Federal law authorizes natural gas facility operators to take property by eminent domain to accomplish the purposes set forth in certificates of public convenience and necessity under the Natural Gas Act.  Despite receiving a certificate in 1958 and operating the Medina Storage Field since 1959, Columbia did not seek to acquire underground gas storage easements under the Landowners' properties until 2014.  The Landowners sued for trespass and unjust enrichment damages.  Columbia has moved for summary judgment on the Landowners

claims.  ECF Doc. 89.  The Landowners have also moved for partial summary judgment, seeking

a liability determination that Columbia has trespassed on each of the Landowners' properties

since 1959 and a declaration that the trespass was malicious.  EFC Doc. 86.  Because the

Landowners have no evidence that Columbia's conduct has caused actual damage to

Landowners' properties or has in any way interfered with Landowners' use or anticipated use of

their properties, and because Columbia's construction and operation of the Medina Storage Field

was mandated by federal agency action, Columbia cannot be liable to the Landowners for

trespass.  In addition, because Landowners will receive just compensation for Columbia's taking

in a companion action, Columbia's only potential liability on an unjust enrichment claim is for

interest on the just compensation amount it is required to pay.  The court will direct the parties to

submit an agreed calculation of the prejudgment interest amount.  As a result, Columbia's

motion for summary judgment will be GRANTED in PART and DEFERRED in PART and

Landowners' motion for partial summary judgment will be DENIED.

## II.    Procedural Background and Claims Asserted

The Landowners instituted this action on March 5, 2014.  Doc. 1.  They asserted claims

similar to those alleged in an earlier-filed putative class action case in the Southern District of

Ohio, *Wilson et al v. Columbia Gas Transmission, LLC*, Case No. 2:12cv01203 (S.D. Ohio

2012).  None of the plaintiffs in this case was an original party in *Wilson*; but Columbia is the

defendant in both cases.  On April 22, 2014, Columbia filed an amended counterclaim in *Wilson*

joining the Medina Landowners as counterclaim defendants.  The next day, Columbia moved to

dismiss the instant case, asserting that *Wilson*, the first filed case, had priority.  On March 5,

2015, Judge Wells granted Columbia's motion to dismiss.  ECF Doc. Nos. 18, 19.  On February

24, 2016, the Sixth Circuit reversed the dismissal and remanded the case.  ECF Doc. No. 22.

Taking a suggestion by the court of appeals, Columbia moved to stay this case.  ECF Doc. No. 27.  On May 4, 2016, Judge Gwin[1] denied defendant's motion to stay due, in part, to delays in *Wilson* and the appropriateness of venue in the Northern District of Ohio.

On May 26, 2016, Columbia and the Medina Landowners jointly requested that their claims in *Wilson* be severed and transferred to the Northern District of Ohio.  That request was granted, and on June 10, 2016, the case was transferred to the Northern District of Ohio and recaptioned *Columbia Gas Transmission, LLC v. Booth, et a.*, 1:16cv01418 ("*Booth.*")  Shortly thereafter, Columbia filed an Amended Complaint in condemnation against the Landowners in *Booth*.[2]

On May 27, 2016, one day after the parties' joint request to sever and transfer their claims in *Wilson*, Columbia moved to dismiss the instant case, arguing that its assertion of a condemnation claim in *Booth* mooted certain claims in this case.  ECF Doc. Nos. 32, 33.  Columbia contended that all of the Landowners' other claims were preempted by the NGA.

On December 22, 2016, the court granted, in part, Columbia's motion to dismiss.  ECF No. 58.  Plaintiffs' claims for mandamus/inverse condemnation (Count Three), declaratory judgment (Count Four), and permanent injunction (Count Five) were dismissed.  The court declined to dismiss the claims for trespass (Count One) and unjust enrichment (Count Two).

The Landowners premise their trespass and unjust enrichment claims on the contention that Columbia had no right to store natural gas beneath their properties prior to the acquisition of

---

[1] The action was reassigned to Judge James S. Gwin after the retirement of Judge Wells.
[2] On December 5-8, 2017, a hearing took place in *Booth* before a Commission appointed to determine just compensation for the taking of plaintiffs' subsurface property rights.  On January 12, 2018, the Commission issued a report recommending the amount of just compensation to be awarded to the landowners.

property rights by eminent domain.  In Count One, the Landowners claim that Columbia maliciously trespassed and should be liable for nominal, compensatory, and punitive damages and for attorney fees.  Count Two asserts that Columbia has been unjustly enriched by being able to store natural gas beneath their properties without cost since 1959.  The Landowners claim Columbia should be required to disgorge what it would have paid for such gas storage, or the net profit it earned from storing natural gas beneath their properties.  They also impliedly claim Columbia was unjustly enriched by retaining the money it would have paid as just compensation for its taking of their properties.

## III.    Factual and Regulatory Background

The following facts are undisputed and/or established by the Rule 56 evidence. Columbia is an interstate natural gas company as defined by Section 2(a) of the Natural Gas Act ("NGA").  ECF Docs. 46, 66.  Columbia operates an extensive interstate natural gas transportation and storage system that includes one of North America's largest underground natural gas storage systems (37 storage fields in four states with nearly 600 billion cubic feet in total capacity).  Id.  The Medina Storage Field is one of those facilities.  Id.  The Medina Storage Field exists within the Clinton sandstone formation located approximately 3,000 feet beneath the surface of the land.  Id.  Columbia injects natural gas into these storage fields during the summer months when gas demand is low and withdraws the storage gas during the winter months when demand is high, in order to stabilize the supply and, as a result, the price of natural gas.  Id.

The Natural Gas Act ("NGA"), 15 U.S.C. § 717 *et seq.* regulates Columbia's interstate natural gas operations.  Id.  The NGA authorizes the Federal Energy Regulatory Commission ("FERC") to issue certificates of public convenience and necessity to undertake the construction and maintenance of facilities for the transportation, distribution and sale of natural gas.  15

4

U.S.C. § 717f(c).  Pursuant to the NGA, Columbia's predecessor, the Ohio Fuel Gas Company,

obtained a certificate of public convenience and necessity ("1958 Certificate") from the Federal

Power Commission – FERC's predecessor – (ECF Doc. 55-1, Page ID# 831-834)[3] for the

"conversion of Applicant's depleted Clinton Sand of the Medina gas producing field in Medina

County, Ohio, into a gas storage field" on July 21, 1958.  Id. at Page ID# 832.  Ohio Fuel Gas

submitted application G-14269 for the certificate on January 6, 1958; the Federal Power

Commission granted "[t]emporary authority to construct and operate" the proposed facilities on

May 27, 1958, two months prior to the issuance of the certificate.  Id.

On April 10, 1987, Columbia filed an application with the Federal Energy Regulatory

Commission ("FERC") for a certificate of public convenience and necessity "authorizing the

continued operation of five of its existing storage fields…as currently constituted and operated;

namely...  [the] Medina Storage Field in Medina County, Ohio."  (ECF Doc. 55-3, Page ID# 907-

908)  FERC issued the Certificate on November 2, 1987 (the "1987 Certificate").  Id.

Once FERC issues a certificate of public convenience and necessity, a certificate holder

does not have the right to "abandon all or any portion of its facilities, subject to the jurisdiction

of the Commission, or any service rendered by means of such facilities without the permission

and approval of the Commission . . . ."  15 U.S.C. § 717f(b).

The NGA grants the right of eminent domain to FERC certificate holders as follows:

> When any holder of a certificate of public convenience and necessity cannot acquire by
> contract, or is unable to agree with the owner of property to the compensation to be paid
> for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe
> lines for the transportation of natural gas, and the necessary land or other property, in
> addition to right-of-way, for the location of compressor stations, pressure apparatus, or

---

[3] Columbia Gas Transmission Corporation merged with The Ohio Fuel Gas Company and others on
December 14, 1971. (ECF Doc. 55-2, Page ID# 837, et. seq.)  Columbia Gas Transmission Corporation
changed its name to Columbia Gas Transmission, LLC on December 9, 2008.  (ECF Doc. 55-4, Page ID#
910-913.)  For ease of reference, the court will refer to the actions of Ohio Fuel Gas Company as if they
had been taken by Columbia.

other stations or equipment necessary to the proper operation of such pipe line or pipe lines, *it may* acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided,* That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

15 U.S.C. §717f(h)(emphasis added).  None of the Landowners owned their property as of the date of the issuance of either the 1958 or the 1987 Certificates.  The earliest any of them acquired their property was 1991.  (ECF Doc. 93-1, Page ID# 3116.)  In 2013, Columbia offered each of the Medina Landowners $250.00 per lot in return for the grant of an easement permitting underground gas storage beneath their properties.[4]  None of the Medina Landowners accepted this offer.  ECF Docs. 46, 66.

## IV.    Standard of Review

Under Fed. R. Civ. P. 56(a), summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.2505, 91 L.Ed.2d 202 (1986).  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56 (e)(2).  As the Supreme Court has explained, "[the non-moving party] must do more than

---

[4] In ¶¶ 3-31 of the Second Amended Complaint (Doc. 46), plaintiffs allege that their respective properties are within the "certificated boundaries" of the Medina Storage Field.  Defendant admitted these allegations as to some of the defendants.  (Doc. 66, ¶3-31)

simply show that there is metaphysical doubt as to the material facts." *Matsushita Elec., Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether genuine issues of material fact exist, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson,* 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of any genuine issue of material fact." *Celotex v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed R. Civ. P. 56(c), (e).

## V.    Law and Analysis

The Landowners trespass and unjust enrichment claims are premised on the belief that Columbia's *right to store* natural gas in the Medina Storage Field was conditioned upon its acquisition of property rights – gas storage easements – from the Landowners. ECF Doc. 100, Page ID#3471-3472 ("Columbia is now seeking to condemn the properties for their use through the *Booth* case despite having the authority *and obligation* to do so at the earliest since 1958." (Emphasis added)). The 1958 and 1987 Certificates and the applicable statute and regulations indicate otherwise.

The 1958 Certificate authorized the construction and operation of the Medina Storage Field "upon the terms and conditions of this order."  ECF Doc. 55-1, Page ID# 833.  The terms and conditions included the obligation to comply with specified subsections of "Section 157.20 of the Commission's Regulations under the Natural Gas Act."[5]  None of the requirements of that regulation mandated the completion of the eminent domain process established in 15 U.S.C. § 717f(h), and none of the express conditions of the 1958 Certificate did either.  Moreover, the 1958 Certificate expressly acknowledged that the Federal Power Commission had granted Columbia temporary authority to construct and operate the facilities that had been proposed as of May 27, 2958, two months before the 1958 Certificate was issued.  ECF Doc. 55-1, Page ID# 832.  Thus, Columbia was authorized to store gas in the Clinton sandstone formation constituting the Medina Storage Field before obtaining gas storage easements from the surface land owners.

The 1987 Certificate similarly imposed a requirement that Columbia comply with "all applicable Commission Regulations under the Natural Gas Act and particularly the general terms and conditions set forth in…Section 157.20 of such Regulations."  ECF Doc. 55-3, Page ID#907-908.  None of those regulations mandated the immediate completion of eminent domain actions.  Nothing in 15 U.S.C. §717 et. seq. conditions the validity of a certificate of public convenience and necessity upon the completion of eminent domain easement acquisitions.  Indeed, § 717f(h) expressly indicates that eminent domain *may* be used to acquire rights of way "or other property, in addition to right-of-way" needed to construct and operate the natural gas facility.

To say it another way, the Landowners have cited no law – and the court has found none – standing for the proposition that a certificate of public convenience and necessity for the underground storage of natural gas is automatically invalidated because a certificate holder fails

---

[5] This regulation is now codified at 18 C.F.R. § 157.20.

to pursue eminent domain acquisition of gas storage easements at or about the time it begins to store natural gas.  The necessary conclusion from this analysis is that Columbia, while it undoubtedly should have completed the acquisition of storage easements, had the right – and indeed was obligated – to store natural gas in the Medina Storage Field not later than three years after the 1958 Certificate was issued.  ECF Doc. 55-1, Page ID# 833, ¶ (C).

The question this case presents is whether Columbia's storage of natural gas in the Medina Storage Field without having condemned gas storage easements by eminent domain constitutes trespass.  Also, the court must determine whether such conduct has unjustly enriched Columbia.

### A.        Trespass Claim

The Landowners all own residential lots in Medina County.  Collectively, the Landowners' properties make up a little more than five acres of the approximate ten thousand acres of Columbia's Medina Storage Field.[6]  They contend Columbia "is storing and has stored natural gas" beneath their properties without their permission and before completing eminent domain proceedings."  ECF Doc. 46, Page ID# 48.  Plaintiffs do not allege Columbia ever trespassed on the surface of their properties in order to construct or operate the Medina Storage Field.  Instead, they allege Columbia's stored natural gas indirectly entered the Clinton sandstone formation under their lands from remote injection sites.  The Landowners assert that the "nearest wellheads are 800 feet from [their properties]."  ECF Doc. 100, Page ID# 3473.

The court must apply Ohio law regarding trespass and unjust enrichment claims.  *See Baker v. Chevron USA, Inc.*, 533 Fed. Appx. 509 (6th Cir., Aug. 2, 2013).  And, because the

---

[6] Columbia has pointed out that not all of the plaintiffs actually own land above the Medina Storage Field. For purposes of this order, the court will refer to all of the plaintiffs as "Landowners," but it will distinguish among the plaintiffs in its final disposition of the action.

Ohio Supreme Court decision in *Chance v. BP Chemicals, Inc.*, 77 Ohio St.3d 17 (1996) first recognized and defined an Ohio cause of action for subsurface trespass, the court must determine its applicability here.  Columbia argues that *Chance* is fatal to the Landowners trespass and unjust enrichment claims as a matter of law under the undisputed facts.  The Landowners contend that the Ohio Supreme Court expressly ruled that *Chance* is inapplicable to cases involving "oil and gas issues."  ECF Doc. 100, Page ID# 3476.

In *Chance,* the Ohio Supreme Court confronted a claim that BP Chemicals had trespassed upon plaintiff's land by injecting hazardous wastes into a subsurface stratum at a remote location which eventually migrated to areas beneath plaintiff's land.  The Court began its analysis of the plaintiff's trespass claim by defining their property rights.  The Court rejected the ancient maxim that a property owner owns everything above and below the land to an indefinite extent, finding it incompatible with a modern understanding of land use and property ownership.  The Court observed, "[O]wnership rights in today's world are not so clear-cut as they were before the advent of… injection wells."  77 Ohio St.3d at 23.  The Court had earlier limited the air rights of landowners.  In *Willoughby Hills v. Corrigan,* 29 Ohio St.2d 39, 50 278 N.E. 2d 658, 664 (1972), the Supreme Court ruled: "We own so much of the space above the ground as we can occupy or make use of, in connection with the enjoyment of our land.  This right is not fixed.  It varies with our varying needs and is coextensive with them.  The owner of land owns as much of the space above him as he uses, but only so long as he uses it."  Id. (quoting *Hinman v. Pacific Air Transp.* 84 F.2d 755, 758 (9th Cir. 1936)).

*Chance* extended *Willoughby Hills* by concluding that a property owners' subsurface rights also are not absolute: "[W]e find that there are also limitations on property owners' subsurface rights.  We therefore extend the reasoning of *Willoughby Hills*, that absolute

10

ownership of air rights is a doctrine which 'has no place in the modern world,' to apply as well to ownership of subsurface rights."  77 Ohio St.3d at 23.  *Chance* held that the landowners in that action did "not enjoy absolute ownership of the waters of the state below their properties, and therefore… their subsurface ownership rights are limited."  *Id.  Chance* plainly stands for the proposition that property owners in the current age do not enjoy "absolute ownership" of the subsurface strata beneath their properties.

 *Chance* further held, under the "unique facts" involved there, the landowners' "subsurface rights in their properties include[d] the right to exclude invasions of the subsurface property that actually interfere[d] with [the owners'] reasonable and foreseeable use of the subsurface."  Id. at 23-24.  If a landowner's right to exclude a subsurface invader is limited to those portions of the subsurface the landowner actually uses or foreseeably may use, then *Chance* should also stands for the converse proposition that one has no right to exclude a subsurface "invader" from portions of the subsurface that one does not use.  An invader's use of subsurface strata not used by the surface owners would not be unlawful.  That is precisely how *Chance* was characterized in the district court's summary judgment ruling in *Baker v. Chevron USA Inc.*, 2009 U.S. Dist. LEXIS 110524 (S.D. Ohio, Nov. 4, 2009), *aff'd.* 533 Fed. Appx. 509 (6th Cir., Aug. 2, 2013): "In the end, the *Chance* court held that plaintiff's had not demonstrated an *unlawful* entry on their properties by BP."  Id. at *27 (emphasis added).

 Here, the facts are undisputed that the Landowners have never used and had no plans to use the Clinton sandstone formation beneath their properties.  Applying *Chance* requires the conclusion that Columbia's injection of its natural gas into that formation was not trespass because the Landowners had no right to exclude Columbia from using that stratum.  Moreover, Columbia's possession of the 1958 and 1987 Certificates – which both authorized and

11

required it to store natural gas in the Medina Storage Field – buttresses that conclusion.  Much like BP Chemicals in *Chance*, Columbia received governmental permission to engage in the very activities about which the Landowners now complain.

*Chance* also recognized a trespass claim when the surface landowner could demonstrate that the subsurface invasion had caused actual physical damage to the property.  Speculative stigma damages to real estate values allegedly arising from the presence of the subsurface hazardous waste injectate, however, were found insufficient to establish the actual damages needed to support a trespass claim.  Because the plaintiffs in *Chance* failed to show actual physical damages to their properties or actual interference with the reasonable and foreseeable use thereof, they failed, as a matter of law, to establish an unlawful entry onto – or trespass upon – their properties.  The Supreme Court concluded the trial court should have entered a directed verdict in favor of BP.  *Chance*, 77 Ohio St.3d at 27-28.

*Chance* has been applied to other state and federal indirect trespass claims.  In *Lueke v. Union Oil Co. of Cal,* 2000 Ohio App. LEXIS 4845 (6th Dist.), the Ohio Court of Appeals affirmed summary judgment against a landowner who alleged gasoline contamination of a groundwater well from a nearby leaking underground storage tank, holding:

> In cases of indirect trespass, damages are not presumed, and actual damages in the form of "physical damages or interference with use" must be shown before the person suing for trespass can prevail.  [*Chance*] at 26-28. Furthermore, the damages must be "substantial." *Williams v. Oeder* (1995), 103 Ohio App.3d 333, 339; and *Brown v. County Commissioners of Scioto County* (1993), 87 Ohio App.3d 704, 717.  *See, also*, Prosser, *Law of Torts* (5 Ed.1984) 67-69, and 82-83, Section 13.

Id. at *7.  Summary judgment was affirmed because Lueke had not suffered a substantial or unreasonable interference with her use and enjoyment of the property.  Id. at *8.

12

In *Baker v. Chevron USA Inc.,* 533 Fed. Appx. 509 (6th Cir., Aug. 2, 2013), the Sixth

Circuit applied *Chance* to an indirect trespass claim involving a subsurface liquid waste plume

from a petroleum refinery that migrated to within fifty to seventy feet of the surface of plaintiffs'

properties.  The Sixth Circuit upheld the district court's application of *Chance* to the facts of

*Baker* and affirmed the grant of summary judgment against the property owners:

> We agree with Chevron that plaintiffs have to show something more than the
> "mere detection" of soil vapors on their properties to establish the physical
> damage prong of an indirect trespass claim.  Under *Chance*, plaintiffs must
> produce evidence showing that (1) the plume or its soil vapors have invaded their
> property, and (2) that invasion has caused either substantial physical damage to
> the land or substantial interference with their reasonable and foreseeable use of
> the land.  These elements are plainly apparent in *Chance* because, as the court
> explained, even if it assumed that BP's injectate invaded the plaintiffs' properties,
> the plaintiffs were still required to show that the invasion physically damaged the
> property or interfered with their use and enjoyment of the property.  *Chance*, 670
> N.E.2d at 993; see also *Rini v. Dyer*, No. 07CA3180, 2008 Ohio 4172, 2008 WL
> 3824790, *5 (2008) (unpublished) ("'[W]here property owners are relying on a
> theory of "indirect" trespass, there is no presumption of damages.'")(quoting 88
> Ohio Jur. 3d Trespass § 19); *Ramirez v. Akzo Nobel Coatings, Inc.,* 153 Ohio
> App.3d 115, 2003 Ohio 2859, 791 N.E.2d 1031, 1034 n.2 (Ohio Ct. App. 2003).

Id. at 522-523.

Here, the Landowners rely on *Chance* to argue that "Ohio recognizes underground

trespass as a distinct tort with distinct mechanics to award damages," but then insist that the

court must not actually apply *Chance*.  ECF Doc. 100, Page ID# 3478.  The Landowners assert

that they have cited *Chance* "for its dicta definition of trespass, but not its applicability to the

case at bar."  Id. at Page ID# 3477, n.3.  Instead, the Landowners argue the court should use the

definition of trespass found in *Apel v. Katz*, 83 Ohio St.3d 11, 19, 697 N.E.2d 600 (1998).  But

the Landowners' brief neglected to point out that *Apel* relied in part on *Chance* for the elements

of a trespass claim.

13

The Landowners assert that different legal tests should determine subsurface trespasses claims arising from the lateral migration of injected wastes or chemicals as compared to trespass claims resulting from injected natural gas. This court concludes that such a distinction does not exist. Trespass is, by definition, an unapproved entry upon the land of another. And the Ohio Supreme Court has made it clear that subsurface trespasses are not actionable unless the invaded landowner can prove actual damage to the property or actual interference with the actual or foreseeable use of the land.

In recognition of their lack of actual damage evidence, the Landowners invoke *Pearl v. Pic Walsh Freight Co.,* 112 Ohio App.11, 12, 168 N.E.2d 571, 572 (1960) for the proposition that Columbia's alleged trespass at least warrants nominal damages. The hope is that nominal damages would provide a foothold for a jury's consideration of punitive damages. However, in *Pearl* nominal damages were presumed and awarded against a defendant who stored trucks and trailers on plaintiff's property without permission and despite plaintiff's demands. The presumption of nominal damages for a *surface* trespass is not the issue presented in this case. And, as the Sixth Circuit recognized in *Baker v. Chevron USA Inc.*, "where property owners are relying on a theory of 'indirect' trespass, there is no presumption of damages." 533 Fed. Appx. at 523. As a result, nominal damages cannot be presumed here. Further, this court cannot find that the appeals court decision in *Pearl* – which predated *Chance* by thirty years – somehow takes precedence over *Chance*. *Pearl*, decided long before a cause of action for subsurface had been recognized in Ohio, is simply not pertinent here.

The Landowners also rely on *Bowman v. Columbia Gas Transmission,* 850 F.2d 692, 1988 U.S. App. LEXIS 9229 (6th Cir., July 6, 1988)*,* in which an indirect gas-storage trespass claim was permitted to go to trial, resulting in an award of $8,300 in compensatory damages and

14

$30,000 in punitive damages.  However, *Bowman* provides little guidance on the validity of the Landowners' trespass claim.  First, the Sixth Circuit expressly stated that it could not consider Columbia's argument that its conduct did not constitute a trespass under Ohio law because Columbia had not preserved the issue for appeal.  Id. at *5.  .  Moreover, because *Bowman* was decided before *Chance*, neither the district court nor the Sixth Circuit had the opportunity to consider the landowner's trespass claim in light of *Chance*.  Finally, *Bowman* can also be distinguished because the Bowmans proved that Columbia's storage of gas interfered with their intended use of their land; they had contracted with a third party for the drilling of a well on their property.  In contrast, the undisputed Rule 56 evidence in this case demonstrates that none of the Landowners had ever attempted or intended to use the subsurface areas of their property where Columbia stored gas.  *See* ECF Docs. 91 & 93.

In short, the court concludes that the holding of *Chance v. BP Chemicals, Inc.* and its progeny apply to the facts of this case.[7]  Thus, to recover on their indirect subsurface trespass claims, the Landowners are required to prove that their properties suffered actual physical damages or that Columbia interfered with the Landowners' actual or reasonably foreseeable uses of their properties.  *Chance,* 77 Ohio St.3d at *27-28.  It is undisputed that the Landowners cannot meet this evidentiary burden.

When asked to describe any damages to their properties, the Landowners have responded with speculations regarding possible stigma to their properties.  For example, in responding to a

---

[7] Columbia alternatively argues that, if the court does not apply the *Chance* holding, it should apply the negative rule of capture referenced in *Chance* and announced in *R.R. Comm'n of Tex. v. Manziel,* 361 S.W.2d 560, 568 (Tex. 1968).  Because the court has determined that the *Chance* holding does apply here, it is unnecessary for the court to consider whether the negative rule of capture announced in a non-controlling Texas case should apply to the facts of this case.  The court declines to consider Columbia's alternative argument regarding the negative rule of capture.

discovery request concerning damages they had suffered due to Columbia's gas storage, Laurie and Richard Baatz stated:

> OBJECTION:   * * *  Without waiving my objection, Columbia has been wrongfully storing natural gas beneath our property since 1958 without any notice or compensation being paid.  Now that we know of the storage, we are required to disclose it on the Ohio Residential Property Disclosure form if we attempt to sell our home.  The loss of value of our home will be detailed by an appraiser at the appropriate time in this case.

> Further, there is a smell of gas when you enter our subdivision, which has been present for quite a while.  This is particularly scary given that gas storage fields like ours have been known to erupt, just like the eruption in California in 2015. ECF Doc. 91-3 Page ID# 2461.

The Baatzes' response to a question regarding any alleged interference with their property is nearly identical.  Id.  The other Landowners' responses to these questions are similar or identical.  ECF Doc. 91-3.  But *Chance* expressly held that speculative stigma damages purportedly affecting property values are not recoverable on indirect trespass claims absent actual physical damage or actual interference with use.  *Chance,* 77 Ohio St.3d at 27.  In *Baker,* the Sixth Circuit upheld the district court's rejection of similar damage claims based on the odor of gasoline.  The Sixth Circuit held that such an interference was either *de minimis* or irrational and, therefore, not compensable.  *Baker* 533 Fed. App'x. at 524, citing *Banford v. Aldrich Chem. Co., Inc.,* 126 Ohio St.3d 210 (2010).  The Landowners have offered no evidence that any of them has suffered actual physical damages to their properties or any evidence that Columbia actually interfered with their use of their properties.  This evidentiary void is fatal to their trespass claims.

It is worth noting that the Landowners sought just compensation for the same claims of stigma damage to their property values in the *Booth* condemnation case, relying upon expert testimony on property values.  Because the claim of stigma damages is necessarily forward

16

looking, to the extent the Landowners receive compensation for such damages in as a result of *Booth*, they would be foreclosed from seeking the same damages here.[8]

The Landowners also argue that they are entitled to storage fees for the time that Columbia stored gas under their properties for fifty-nine years.  ECF Doc. 100, Page ID# 3485-3486.  Plaintiffs cite *Beck v. N. Natural Gas Co.,* 170 F.3d 1018, a case from the Tenth Circuit which limited a landowners' damages to the fair rental value of the property[9] for the period in question and later awarded attorney fees, expenses and costs pursuant to a Kansas statute.  *Beck,* 170 F.3d at 1021.  *Beck* is inapplicable here.  Even if the court were determining just compensation for a property taking in this case (rather than in *Booth*),[10] it would be required to apply Ohio law.  *See Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement,* 962 F.2d 1192, 1199 (6th Cir. 1992).  Because *Beck* applied Kansas law and awarded damages, in part, based on a Kansas statute, it cannot govern trespass damages in this case.

The undisputed Rule 56 evidence is that each of the Landowners acquired their property after Columbia began storing gas in the Medina Storage Field.  See ECF Doc. 93-1, Page ID# 3116.[11]  It is also undisputed that none of the Landowners knew of Columbia's gas storage operations until September 2013 when Columbia sent them letters offering to acquire easements by contract prior to commencing condemnation proceedings.  It is undisputed that none of the Landowners has used the subsurface formation in which the gas is stored.  The Landowners invoke *U.S. v. Jordan,* 186 F.2d 803, 808 (6th Cir. 1951) for the proposition that they acquired a

---

[8] In Ohio, an injured party is entitled to only one satisfaction for his injuries.  *See Seifert v. Burroughs,* 38 Ohio St. 3d 108, 110 (1988).

[9] *Beck* resulted in an award of $100.00 per acre as the fair rental value for the period in question. Attorneys' fees, costs and expenses were later assessed pursuant to Kan. Stat. Ann. § 55-1210(c)(3).

[10] As already explained, just compensation for Columbia's taking will be determined in the *Booth* case.

[11] The earliest purchase of the relevant land occurred in 1991, long after Columbia allegedly began storing gas in 1959.

right to sue for trespass from their predecessors in interest. *Jordan* does not resolve the fundamental problem with the Landowners' trespass claims. Even if the principles of *Jordan* were applicable, that case decides an issue that the court need not reach here. *Jordan* involved a landowner's claim for physical damages to timber on leased property and after an express assignment of rights by a previous owner. *Jordan* does nothing to undercut the *Chance* requirement that there must be actual physical damage or actual interference with use before a subsurface trespass claim can be actionable. Further, *Jordan* did not involve an allegation of subsurface trespass. Here, there is no evidence that any predecessor owner had suffered any actual damages or experienced such interference. As a result, there is no basis for concluding the Landowners acquired any actionable trespass claim upon the acquisition of their properties.

The application of *Chance* and its progeny leads to the inescapable conclusion that Columbia is entitled to summary judgment as a matter of law on the Landowners' trespass claims because they have failed to show any physical damage or interference with the use of their properties and because Columbia was required to operate the Medina Storage Field under federal law.

### B.    Unjust Enrichment Claim

The Landowners' Count Two unjust enrichment claim is the only other cause of action remaining. See ECF Docs. 46, Page ID#749 and 58. The unjust enrichment claim appears to rest on two theories: (1) that it was unjust for Columbia to *use* the Clinton sandstone formation beneath the Landowners' properties without having first obtained gas storage easements from those who owned the surface lots above; and (2) that Columbia has been unjustly enriched by being able to keep money it would have paid as just compensation after acquiring easements by eminent domain. Under the first theory, the Landowners reason that Columbia should be

required to disgorge the profits earned on the gas it stored before it had the right to do so.

Alternatively, they argue Columbia should be required to pay the Landowners what Columbia

would have paid in storage fees from 1959 to the date it pays just compensation.  ECF Doc. 100,

Page ID# 3486.  The second theory involves the implicit contention that Columbia should be

required to provide restitution for the unpaid just compensation amounts plus interest from the

time the property was first taken by physical occupation in 1959.

      The parties do not agree on when Columbia's "taking" of the Clinton sandstone

formation for the Medina Storage Field occurred.  The court must determine this predicate issue

because Ohio law requires the person seeking unjust enrichment recovery to prove that he or she

conferred a benefit upon the party from whom relief is sought.  In *Johnson v. Microsoft Corp.,*

106 Ohio St.3d 278 (2005), the Ohio Supreme Court defined unjust enrichment and the

restitution-based remedy that may be sought from one who has been unjustly enriched:

> Unjust enrichment occurs when a person "has and retains money or benefits
> which in justice and equity belong to another," *Hummel v. Hummel* (1938), 133
> Ohio St. 520, 528, 11 O.O. 221, 14 N.E.2d 923, while restitution is the "common-
> law remedy designed to prevent one from retaining property to which he is not
> justly entitled," *Keco Industries, Inc. v. Cincinnati & Suburban Bell Tel. Co.*
> (1957), 166 Ohio St. 254, 256, 2 O.O.2d 85, 141 N.E.2d 465.

> To establish a claim for restitution, therefore, a party must demonstrate "(1) a
> benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant
> of the benefit; and (3) retention of the benefit by the defendant under
> circumstances where it would be unjust to do so without payment ('unjust
> enrichment')."  *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183,
> 12 OBR 246, 465 N.E.2d 1298.

> As this court has stated, the purpose of such claims "is not to compensate the
> plaintiff for any loss or damage suffered by him but to compensate him for the
> benefit he has conferred on the defendant."  *Hughes v. Oberholtzer* (1954), 162
> Ohio St. 330, 335, 55 O.O. 199, 123 N.E.2d 393.

Id. at 286.  *See also Arcelor Mittal Cleveland, Inc. v. Jewell Coke Co., L.P.*, 750 F. Supp. 2d 839,

849 (N.D. Oh. 2010)("To succeed on a claim for unjust enrichment, a plaintiff must prove (1)

that a benefit was conferred by the plaintiff on the defendant; (2) the defendant's knowledge of the benefit; and (3) the improper retention of the benefit.")  Thus, in order to sue for unjust enrichment, the claimant must have been the one who conferred the benefit.  *Hull v. Hartley*, 2009-Ohio-88, at ¶ 13 (3rd Dist. App.)

The NGA authorizes the use of the right of eminent domain to acquire rights in properties when necessary to accomplish the activities authorized in certificates of public convenience and necessity.  Columbia argues that its "taking was effected as of the date it filed its condemnation" action in *Booth*.  ECF Doc. 90, Page ID# 2433.  But Columbia has undisputedly stored natural gas in the Medina Storage Field "since 1959."  ECF Doc. 100, Page ID# 3463, 3484.  Thus, a "taking" to operate as required by the 1958 Certificate occurred then.  *United States v. Dow*, 357 U.S. 17, 22, 2 L.Ed.2d 1109, 78 S.Ct. 1039 (1958).  The court has already concluded that Columbia had a right – and indeed was obligated – to construct and operate the Medina Storage Field within three years of the issuance of the 1958 Certificate.  Page 8, *supra.*  The court further concludes that Columbia's taking occurred when it occupied the Clinton sandstone formation for the Medina Storage Field in 1959.

Columbia's government-sanctioned taking of the Clinton sandstone formation for the Medina Storage Field gave rise to an obligation to pay just compensation in 1959.  "The owner at the time the Government takes possession 'rather than the owner at an earlier or later date, is the one who has the claim and is to receive payment.'"  *Dow*, 357 U.S. at 22, citing *23 Tracts of Land v. United States*, 177 F.2d 967, 970 (6th Cir. 1949).  Despite taking the Clinton sandstone formation beneath the Landowners' properties in 1959, Columbia never paid the then-owners just compensation.  And the former owners, being unaware of the taking, never commenced inverse condemnation actions.  Those who owned the Landowners' properties in 1959 had

claims to recover just compensation. The Landowners, having no interest in the property at the time of the taking, did not. *Dow*, 357 U.S. at 22.

Because Columbia never instituted condemnation proceedings until it asserted the counterclaim in *Booth*, it never acquired title to gas storage easements, despite its physical occupation of the Clinton sandstone formation in 1959. *Dow*, 357 U.S. at 21-22 (citing *Albert Hanson Lumber Co. v. United States*, 261 U.S. 581, 587, 43 S.Ct. 442, 67 L.Ed. 809 (1923)). However, title for the easements will pass upon completion of the eminent domain process in *Booth*. Columbia will be required to pay just compensation in order to acquire the gas storage easements. Columbia acknowledges that it must obtain the easements – legal title – to the Clinton sandstone formation in order to have the authority to prevent others from interfering with its stored natural gas. ECF Doc. 90, Page ID#2429, n.4.

Given the foregoing, the necessary question presented is whether the Landowners have standing to assert an unjust enrichment claim arising from Columbia's 1959 taking. To do so, *they* must have conferred a benefit upon Columbia. They assert that the benefit they conferred was permitting Columbia to use the Clinton sandstone formation beneath their properties for natural gas storage. This is a doubtful proposition inasmuch as Columbia's taking occurred in 1959 and the earliest any of the Landowners' acquired their property was 1990. Columbia challenges the Landowners' contention that they conferred a benefit upon Columbia, not based on their lack of ownership in 1959 when Columbia's taking occurred, but upon its argument that the Landowners do not own the Clinton sandstone formation because they did not use it.[12] ECF Doc. 90, Page ID# 2427, 2429. However, by instituting *Booth*, Columbia has effectively conceded the issue of whether the Landowners have *some* interest in the Clinton sandstone

---

[12] As is more fully discussed above in connection with Columbia's trespass argument.

21

formation, notwithstanding its attempt to argue that is has made no such concession.  Id. Page ID# 2429, n.4.

Most of Columbia's motion for summary judgment and reply memorandum deals with the Landowners' trespass claim; Columbia barely mentions the unjust enrichment claim, often conflating the trespass and unjust enrichment claims as "tort claims."  But "it is well-settled that claims for unjust enrichment sound in contract rather than tort."  *See Dodson v. Maines,* 2012-Ohio-2548, ¶¶ 37-38, citing *Complete Gen. Constr. Co. v. Koker Drilling Co.,* 10th Dist. No. 02AP-63, 2002 Ohio 4778, ¶ 28, n.1.  Columbia urges the court to extend the holding of *Chance v. BP Chemicals* to not only preclude the Landowners' trespass claim but also their unjust enrichment claim.  ECF Doc. 90, Page ID# 2428-2429.  Columbia reasons that, because the Landowners have never used the Clinton sandstone formation, they had no ownership right in that stratum at all.  And if they have no rights in that formation, then they cannot have conferred a benefit upon Columbia by "allowing" its storage of natural gas there.

As discussed above, *Chance* plainly held that a landowner's rights in the subsurface strata beneath his property are not "absolute."  The landowner has no right to exclude another from subsurface areas the landowner does not use.  But *Chance* never held that a surface owner has *no* rights in the subsurface strata.  Indeed, the fee simple owner of land owns all of the legal title to the property.  The Supreme Court's use of the terms "limited" and "not absolute" in *Chance* signifies that some residual rights in the subsurface strata belong to the surface landowner.  Columbia's effort to acquire gas storage easements constitute an admission of this conclusion.

Here, the Landowners argue that Columbia has been unjustly enriched by storing natural gas beneath their properties "since 1959" without having to pay storage fees or even paying just compensation for the taking.  The Landowners seek an order requiring Columbia to disgorge the

profits it earned on the gas stored beneath their properties.  Alternatively, they seek an order requiring Columbia to pay to them what it would have been required to pay for gas storage fees since 1959.

Columbia argues that the Landowners, on the basis of an unjust enrichment claim, are not entitled to disgorgement of Columbia's gross revenues for the gas that was stored on their properties.  Relying on *Beck v. N. Nat. Gas Co.*, 170 F.3d 1018, 1024 (10th Cir. 1999), Columbia argues that the Landowners did not confer upon Columbia the fees Columbia collected for natural gas storage because under no circumstances would the Landowners have been entitled to such fees, even if they had granted storage easement rights to Columbia.  Columbia argues that, at most, the only economic benefit that it allegedly retained that arguably belonged to the Landowners was the amount that it could have been required to pay for gas storage easements.[13] ECF Doc. 90, Page ID# 2434-2435.

In addition to its conclusion that the Landowners conferred no benefit during times their properties were owned by predecessors, the court also concludes that the Landowners are not entitled to Columbia's gross revenues or profits realized from storing gas in the Clinton sandstone formation under their properties even for the periods the Landowners have owned their properties.  In *Beck,* case law cited by the Landowners, the court recognized that the landowners had "offered nothing to show that the profits earned by [defendant] could reasonably be considered a benefit conferred upon [defendant] by them."  Thus, they were not entitled to defendant's profits on their unjust enrichment claim.  Rather, the court held that the proper measure of damages was the fair rental value of the property.  *Beck* 170 F.3d at 1024.  Similarly, the Landowners here cannot show that Columbia's natural gas storage revenues were derived

---

[13] Columbia points out that not all of the plaintiffs are actually landowners above the Medina Storage Field.

from any benefit the Landowners conferred; the Landowners have no claim to such revenues or profits.

A recovery for unjust enrichment, or quasi-contract, requires a plaintiff to prove by a preponderance of the evidence that "(1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of such benefit, and (3) the defendant retained the benefit under circumstances where it would be unjust for him to retain that benefit without payment." *Ross-Co Red Mix Co., Inc. v. Steveco, Inc*., 4th Dist. No. 95CA3, 1996 Ohio App. LEXIS 437, 1996 WL 54174, *3 (Feb. 6, 1996), citing *Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 183, 12 Ohio B. 246, 465 N.E.2d 1298 (1984).

The Landowners' alternative argument is that Columbia benefitted by an amount equal to what the Landowners would have received in rental storage fees for fifty-nine years.  ECF Doc. 100, Page ID# 3485-3486.  Columbia disagrees for two reasons.  First, it contends that damages on an unjust enrichment claim are limited by the six year statute of limitations in Ohio Rev. Code § 2305.07.  Columbia argues that the Landowners' damages are limited to the recovery of any benefits the Landowners conferred and Columbia unjustly retained during the six-year period prior to the filing of this action on March 5, 2014.  And Columbia argues that the filing of the condemnation claim in *Booth* cuts off any claim for unjust enrichment damages allegedly accruing after that date, April 22, 2014.  Second, Columbia argues that the award of just compensation in *Booth* will represent "the actual market value of the storage right" ECF Doc. 90, Page ID#2434, n.9; ECF Doc. 105, Page ID# 3547, n.7.  Columbia contends that, at most, the Landowners could have a right to make an unjust enrichment claim for interest on the funds Columbia held rather than paying to the Landowners as just compensation for storage easements. Id.

24

For the reasons already expressed, the Landowners have no claim to recover gas storage fees for periods before the Landowners acquired their properties.  Any benefit conferred upon Columbia for gas storage during those years did not belong to the Landowners, and the Landowners have not cited any authority holding otherwise.[14]  In addition, the court concludes that the Landowners' claim is governed by the six-year statute of limitations in O.R.C. § 2305.07.  At most, the Landowners can seek unjust enrichment damages for the period from March 5, 2008 through the date of the judgment rendered herein.

The court agrees with Columbia that when the Landowners receive just compensation as a result of *Booth*, they will have been compensated for the storage rights Columbia has utilized since the Landowners acquired their properties.  In addition, the just compensation award will compensate them for the transfer of legal title to the gas storage easements Columbia is taking by eminent domain pursuant to the NGA.

The court also notes that the *Booth* Commission has recommended that Columbia pay $250 per lot or $450 per double lot for permanent easements on the Landowners' properties. The Landowners have not filed any objection to the commission chairman's report.  The just compensation for these permanent easements necessarily encompasses all rental fee obligations Columbia arguably could have owed the Landowners on an unjust enrichment basis.  However, nothing in the Commission's recommendation has captured the time value of these funds dating back to March 5, 2008, the date six years prior to the filing of the instant action.

---

[14] The Landowners invoke *State v. Jordan,* 186 F.2d 803, 808 (6th Cir. 1951), a case the court has distinguished above.  The Landowners also cite R.C. § 5302.04 which states that a conveyance of property includes all rights, easements, privileges and appurtenances, unless stated otherwise.  They cite O.R.C. § 5301.56 concerning the abandonment and preservation of mineral interests, also inapplicable here.  The Landowners cite no authority showing they can assert an unjust enrichment claims related to property that they did not own.

25

Because the court does not believe there will be any genuine dispute of material facts concerning the time value of the per-lot just compensation payments, the court will order the Landowners and Columbia to confer and submit an agreed calculation of interest due on said payments.  For reference, the parties should review and consider the potential application of the interest calculation model adopted by the court in *Hardy Storage Company, LLC v. Property Interests Necessary to Conduct Gas Storage Operations, etc.*, No. 2:07CV5, 2009 WL 689054 (N.D. WV, March 9, 2009).  Upon submission of an agreed interest calculation, the court will entertain a motion to: (i) either apply said interest to the judgment to be rendered in *Booth* (which would necessarily mean that there were no further damages to be awarded on the Landowners' unjust enrichment claim in this action, resulting in summary judgment for Columbia on said claim) or (ii) to render summary judgment in favor of the Landowners on their unjust enrichment claim in this action for the amount of interest due.

In summary, the court concludes that the Landowners have no standing to obtain unjust enrichment damages for benefits allegedly retained by Columbia during times before the Landowners acquired their properties.  The court further concludes that the payment of just compensation in *Booth* will fully compensate the Landowners for any unjust enrichment they may have conferred upon Columbia.  And the court will direct the parties to agree on an amount of prejudgment interest that Columbia should be required to pay on the just compensation amount for the period March 5, 2008 through the date just compensation is paid.

### C.     Punitive Damages

Columbia contends that it is entitled to summary judgment on the Landowners' demand for punitive damages.  Columbia argues that punitive damages are only available with tort claims and that there is no evidence of actual malice in this case.  The Landowners argue that punitive

26

damages are permitted if even nominal damages are awarded on a trespass claim.  ECF 100, Page ID# 3488.  The Landowners also cite *Bowman,* in which the Sixth Circuit affirmed an award of punitive damages associated with a trespass similar to this case.

Under Ohio law, the general rule is that punitive damages may only be recovered in actions involving intentional torts.  See *Mabry-Wright v. Zlotnik*, 165 Ohio App.3d 1, 2005 Ohio 5619, 844 N.E.2d 858, ¶ 18 (3d Dist.)  ( "[P]unitive damages are generally not recoverable in an action for breach of contract."), citing *Digital & Analog Design Corp. v. N. Supply Co*., 44 Ohio St.3d 36, 45-46, 540 N.E.2d 1358 (1989).  However, where the breach of contract action is accompanied by a connected tort that is fraudulent, wanton, reckless, malicious, or oppressive, punitive damages may be appropriate.  *Zlotnik* at ¶ 19.  *See also Hofner v. Davis*, 111 Ohio App.3d 255, 259, 675 N.E.2d 1339 (6th Dist. 1996), and *Burns v. Prudential Sec., Inc.,* 167 Ohio App. 3d 809, 2006 Ohio 3550, 857 N.E.2d 621 (3rd Dist.).

In this case, the Landowners have failed to show physical damages or interference with their properties, and the court has concluded that Columbia is entitled to summary judgment on the Landowners' trespass claim.  Accordingly, because the Landowners' only remaining claim is for unjust enrichment, they are not be entitled to punitive damages.  See *Nelson v. Motorists Mut. Ins. Co.,* 1st Dist. No. C-850841, 1986 Ohio App. LEXIS 8207, 1986 WL 9782, *1 (Sept. 10, 1986).  "[I]t is well-settled that claims for unjust enrichment sound in contract rather than tort." See *Dodson v. Maines,* 2012-Ohio-2548, ¶¶ 37-38, citing *Complete Gen. Constr. Co. v. Koker Drilling Co.,* 10th Dist. No. 02AP-63, 2002 Ohio 4778, ¶ 28, n.1.

*Bowman* does not compel a different result.  As discussed above, *Bowman* was decided before *Chance.*  The Sixth Circuit did not consider whether plaintiffs had asserted a valid claim for trespass under Ohio law because that issue had not been preserved for appeal.  *Bowman,* 1988

27

U.S. App. LEXIS at *4.  Moreover, application of *Bowman* is inapposite because it involved evidence that the storage of gas actually interfered with the use of plaintiff's land.  Here, plaintiffs have shown no such interference.  And finally, the district judge who presided over *Bowman* later determined that he had erred in that decision.  *See Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement, etc*., 747 F. Supp. 401, 404 (N.D. Oh. 1990). Consequently, because the Landowners have not asserted a valid tort claim, punitive damages are unavailable in this case.

> **D.     Preemption**

Finally, the court declines Columbia's invitation to revisit its ruling on the issue of preemption.  The question of preemption was fully considered and addressed in this court's order on Columbia's motion to dismiss.  ECF Doc. 58.  Columbia has not identified any conflict between the NGA and Ohio law that makes it impossible for Columbia to comply with both under the facts of this case.  It is not necessary to reconsider preemption at this time.

**VI.     Conclusion**

The court makes the following orders:

1.     Columbia's motion for summary judgment on Count One of plaintiffs' second amended complaint is GRANTED.

2.     The Landowners' motion for partial summary judgment on Count One of their complaint and on their request for a determination that Columbia's trespass was malicious is DENIED.

3.     On or before 4:00 p.m. on February 26, 2018, the parties shall submit an agreed calculation of the amount of prejudgment interest that would be due on the just compensation

amounts determined by the *Booth* Commission from May 5, 2008 through the date of payment of the just compensation amounts.[15]

4.      On or before 4:00 p.m. on February 26, 2018, the parties shall file a joint listing of the plaintiffs in this action who own properties located above the Certificated Medina Storage Field established by the 1987 Certificate.  Said filing shall also separately list those plaintiffs who do not own property above the Medina Storage Field.

5.      On or before 4:00 p.m. on February 26, 2018, the parties shall file either a joint position statement or separate position statements on whether the interest amount agreed to as required in paragraph 3 above shall be added to the judgment to be entered in *Booth* or shall be awarded as damages on plaintiffs' Count Two unjust enrichment claim in this action.  Should the latter approach be taken, the court will enter summary judgment on the unjust enrichment claim in favor of those plaintiffs identified in the list submitted pursuant to paragraph 4 above who own land above the Medina Storage Field.

6.      The court DEFERS ruling on Columbia's motion for summary judgment on the Count Two unjust enrichment claim until the foregoing requirements are accomplished.

        IT IS SO ORDERED.

Dated: February 14, 2018

                                                Thomas M. Parker
                                                United States Magistrate Judge

---

[15] By submitting an agreed calculation, the parties will not waive any rights to appeal they would otherwise have.